**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | **Case No. 12-49658-705** |
| **BAKERS FOOTWEAR GROUP, INC.,** | ) | |
| | ) | Motion No. 7 |
| **Debtor.** | ) | Hearing Date:  October 4, 2012 |
| | ) | Hearing Time:  1:00 p.m. |

**INTERIM ORDER (1) AUTHORIZING POSTPETITION FINANCING,
(2) GRANTING LIENS AND PROVIDING SUPER PRIORITY
ADMINISTRATIVE EXPENSE PRIORITY, (3) AUTHORIZING
USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE
PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING
A FINAL HEARING, PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014**

Upon the motion (the "***Motion***"),[1] dated October 3, 2012 [Docket No. 7], of Bakers Footwear Group, Inc., as debtor and debtor-in-possession (the "***Debtor***"), pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "***Bankruptcy Code***") and in accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule [4001-2 of the Local Bankruptcy Rules for the Eastern District of Missouri] (the "***Local Rules***"), in the above captioned chapter 11 case (collectively, the "***Chapter 11 Case***"), for entry of an interim order (this "***Interim Order***"), granting the following relief on an interim basis:

    **(I)**    **Interim DIP Financing**

        (A)    Authorizing the Debtor to obtain $6,000,000.00 in postpetition financing, pursuant to that certain *Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement* (as may be amended, modified, or supplemented, the "***DIP Credit Agreement***"), substantially in the form attached here to as ***Exhibit "1,"*** by and between the Debtor, as borrower,

---

[1] Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Financing Agreements (as defined below).

and Crystal Financial LLC, as Administrative Agent, Collateral Agent, and as Lender and secured party (the "***DIP Lender***"), which may be used for the following:

(i)     Funding the Debtor's day-to-day operations and working capital needs; and

(ii)    Roll-up of all outstanding prepetition amounts under the Prepetition Revolving Credit Loan Agreement (collectively, the "***Revolver Roll-Up Amount***").

(B)    Approval of the DIP Credit Agreement and all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of the DIP Lender, including, without limitation, security agreements, pledge agreements, notes, guaranties, mortgages, and Uniform Commercial Code ("***UCC***") financing statements, and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified, or supplemented and in effect from time to time, the "***DIP Financing Agreements***");

(C)    Granting the DIP Lender the following Liens (as defined in section 101(37) of the Bankruptcy Code) and claims:

(i)     A first priority priming, valid, perfected, and enforceable Liens (as defined below), subject only to the Carve Out (as defined below) and the Permitted Prior Liens (as defined below), upon substantially all of the Debtor's real and personal property as provided in and as contemplated by this Interim Order and the DIP Financing Agreements;

(ii)    A superpriority administrative claim status in respect of all obligations under the DIP Financing Agreements (collectively, the "***DIP Obligations***"), subject to the Carve Out as provided herein;

**(II)    Interim Use of Cash Collateral**

(A)    Authorizing the Debtor the use of "cash collateral," as such term is defined in section 363 of the Bankruptcy Code ("***Cash Collateral***"), in which the Prepetition Lender (as defined below) has an interest;

(B)    Granting the Prepetition Lender (as defined below) certain adequate protection, including, among other things, Prepetition Replacement Liens and Prepetition Superpriority Claims (each as defined below) and certain other adequate protection as described in this Interim Order, to the extent of any diminution in the value of the Prepetition Lender's interest in the Prepetition Collateral having the priority set forth in this Interim Order, as adequate protection for the granting of the DIP Liens to the DIP Lender,

the use of Cash Collateral, and for the imposition of the automatic stay;

**(III)** **Modifying the Automatic Stay –** Modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

**(IV)** **Final Hearing** – Scheduling a final hearing (the "*Final Hearing*") to consider entry of an order (the "*Final Order*") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing;

and upon consideration of the *Declaration of Peter A. Edison in Support of the Company's Chapter 11 Petition and Requests for First Day Relief*, dated October 3, 2012 (the "**Edison Declaration**"), and the Court having reviewed the Motion and held a hearing with respect to the Motion on October 4, 2012 (the "*Interim Hearing*"); upon the Motion, the Edison Declaration, and the record of the Interim Hearing and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

**I.** **Procedural Findings of Fact**

      A.    **Petition Date.** On October 3, 2012 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Missouri (the "*Court*"). The Debtor has continued in the management and operation of its business and property as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

      B.    **Jurisdiction and Venue.** This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property

affected hereby.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Chapter 11 Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.    **Committee Formation.**  No official committee (a "***Committee***") of unsecured creditors, equity interest holders, or other parties in interests has been appointed in the Chapter 11 Case.

      D.    **Notice.**  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules.  Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor, to certain parties in interest, including: (i) the Office of the United States Trustee; (ii) those creditors holding the twenty (20) largest unsecured claims against the Debtor's estate; (iii) Crystal Financial LLC, as the Debtor's Prepetition Lender and DIP Lender (each as defined below); (iv) the attorneys for Crystal Financial LLC; and (v) all secured creditors of record. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion is due, proper, and sufficient notice and complies with Bankruptcy Rules 2002 and 4001 and Local Rule [4001-2].

**II.**    **<u>Debtor's Acknowledgements and Agreements</u>**

      E.    Without prejudice to the rights of parties in interest as set forth in Paragraphs 22-24 below, the Debtor admits, stipulates, acknowledges, and agrees that (collectively, Paragraphs E (1) through E (6) hereof shall be referred to herein as the "***Debtor's Stipulations***"):

      (1)    **Prepetition Credit Agreements**.  Prior to the commencement of the Chapter 11 Case, the Debtor was a party to the following agreements:

      (a)    that certain *Credit Agreement*, dated June 13, 2012 (as amended and in effect, the "***Prepetition Credit Agreement***") with Crystal

Financial LLC, as Administrative Agent, Collateral Agent, and as Lender and secured party (the "***Prepetition Lender***"),

(b)    that certain *Security Agreement* dated June 13, 2012 (as amended and in effect, the "***Prepetition Security Agreement***") with the Prepetition Lender;

(c)    all other agreements, documents, notes, certificates, and instruments executed and/or delivered with, to, or in favor of Prepetition Lender, including, without limitation, security agreements, guaranties, and UCC financing statements and all other related agreements, documents, notes, certificates, and instruments executed and/or delivered in connection therewith or related thereto

(collectively, as amended, modified, or supplemented and in effect, collectively, the "***Prepetition Financing Agreements***").

(2)    **Prepetition Debt Amounts**.  As of the Petition Date, the Debtor was indebted to the Prepetition Lender for the following amounts:

(a)    under the Prepetition Financing Agreements, on account of extensions of credit in the approximate principal amount of $17,756,197.54, plus interest accrued and accruing (at the rates set forth in the Prepetition Financing Agreements), costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services secured by the Prepetition Financing Agreements (collectively the "***Prepetition Debt***"), and

(3)    **Prepetition Collateral**.  To secure the Prepetition Debt, the Debtor granted security interests and Liens (collectively, the "***Prepetition Liens***") to the Prepetition Lender upon substantially all of its personal property, including items defined as "Collateral" in the Prepetition Term Credit Agreements (collectively, the "***Prepetition Collateral***").[2]  The Liens of the Prepetition Lender have priority over all other Liens except any Liens which are valid, properly perfected, unavoidable, and senior to the Prepetition Liens or set forth in Section [7.01] of the DIP Credit Agreement (collectively, the "***Permitted Prior Liens***").

---

[2] The acknowledgment and agreement by the Debtors of the Prepetition Debt and the related liens, rights priorities and protections granted to or in favor of the Prepetition Lender, as set forth herein and in the Prepetition Financing Agreements, shall constitute a proof of claim on behalf of the Prepetition Lender in this Case in respect of the Prepetition Debt.

(4)     **Prepetition Liens**.

    (a)    As of the Petition Date, the Debtor believes the following:

        (i)    the Prepetition Liens are valid, binding, enforceable, and perfected first-priority Liens, subject only to any Permitted Prior Liens, and are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law,

        (ii)    the Prepetition Debt constitutes legal, valid, and binding obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Financing Agreements (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code),

        (iii)    no offsets, defenses, or counterclaims to any of the Prepetition Debt exists,

        (iv)    no portion of the Prepetition Debt is subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and

        (v)    the Prepetition Debt constitutes an allowable secured claim, and

    (b)    On the date that this Interim Order is entered, the Debtor has waived, discharged, and released the Prepetition Lender, together with its affiliates, agents, attorneys, officers, directors, and employees, of any right the Debtor may have

        (i)    to challenge or object to any of the Prepetition Debt,

        (ii)    to challenge or object to the security for the Prepetition Debt, and

        (iii)    to bring or pursue any and all claims, objections, challenges, causes of action, and/or choses in action arising out of, based upon, or related to the Prepetition Financing Agreements or otherwise.

    (c)    The Debtor does not possess and will not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Financing Agreements or the Prepetition Liens, or any claim of the Prepetition Lender pursuant to the Prepetition Financing Agreements or otherwise.

(5) **Cash Collateral.** The Prepetition Lender has a security interest in and Lien on certain Cash Collateral, including all amounts on deposit in the Debtor's banking, checking, or other deposit accounts and all proceeds of the Prepetition Collateral, to secure the Prepetition Debt.

(6) **Priming of DIP Facility**. In entering into the DIP Financing Agreements, and as consideration therefor, the Debtor hereby agrees that until such time as all DIP Obligations have been irrevocably paid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and the DIP Financing Agreements have been terminated in accordance with the terms thereof, the Debtor shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lender under this Interim Order by offering a subsequent lender or a party-in-interest a superior or *pari passu* Lien or claim pursuant to section 364(d) of the Bankruptcy Code or otherwise.

III. **Findings Regarding the Postpetition Financing.**

F. **Need for Post-Petition Financing**. An immediate need exists for the Debtor to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's assets, and to maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors, its equity holders, and the possibility for a successful reorganization or sale of the Debtor's assets.

G. **No Credit Available on More Favorable Terms**. The Debtor has been unable to obtain any of the following:

(1) unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense,

(2) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code,

(3) credit for money borrowed secured solely by a Lien on property of the estate that is not otherwise subject to a Lien, or

7

(4)     credit for money borrowed secured by a junior Lien on property of the estate which is subject to a Lien, in each case, on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order.

The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lender the DIP Protections (as defined below).

H.     **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens or Prepetition Liens are valid, senior, perfected, or unavoidable.  Moreover, nothing shall prejudice the following:

(1)     the rights of any party-in-interest, including, but not limited to, the Debtor, the DIP Lender, and any Committee appointed pursuant to section 1102 of the Bankruptcy Code, to challenge the validity, priority, perfection, and extent of any such Permitted Prior Liens, or

(2)     the rights of any Committee appointed pursuant to section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection, and extent of the Prepetition Liens as set forth in this Order.

I.     **Adequate Protection for Prepetition Lender.**  As a result of the grant of the DIP Liens, subordination to the Carve Out, the use of Cash Collateral authorized herein, and the imposition of the automatic stay, the Prepetition Lender is entitled to receive adequate protection pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code for any decrease in the value of its interest in the Prepetition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtor's use, sale, or lease of the Prepetition Collateral (including Cash Collateral) during this Chapter 11 Case.  As adequate protection, the Prepetition Lender will receive the Adequate Protection (as defined below) described in Paragraph 14 of this Interim Order.  In light of such Adequate Protection, the Prepetition Lender has consented to (1) the Debtor's use of Cash Collateral, on the terms set forth in this Interim Order, (2) such Adequate Protection adequately protects the Prepetition Lender, and (3) subject to Paragraphs, 15, 36, and 37, no further adequate protection is necessary.

8

J.      **Prepetition Lender's Consent to Priming**.  The Prepetition Lender has consented to the priming of the Prepetition Liens by the DIP Liens.

K.      **Adequacy of the Budget.**  The Budget (as defined below), attached hereto as ***Exhibit "2***,*"* is adequate, considering all the available assets, to pay the administrative expenses due and accruing during the period covered by this Interim Order.

L.      **Section 552 of the Bankruptcy Code**.  In light of their agreement to subordinate their Liens and superpriority claims (1) to the Carve Out, in the case of the DIP Lender, and (2) to the Carve Out and the DIP Liens, in the case of the Prepetition Lender, the DIP Lender and the Prepetition Lender are each entitled to all rights and benefits of section 552(b) of the Bankruptcy Code and the Debtor shall not assert that the "equities of the case" exception shall apply.

M.      **Conditions Precedent to DIP Lender's Extension of Financing.**  The DIP Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Credit Agreement and the other DIP Financing Agreements and subject to the following:

(1)      the entry of this Interim Order and the Final Order, and

(2)      findings by this Court that such financing is essential to the Debtor's estate, that the DIP Lender is a good faith financier, and that the DIP Lender's claims, superpriority claims, security interests, and Liens and other protections granted pursuant to this Interim Order (and the Final Order) and the DIP Facility will not be affected by any subsequent reversal, modification, vacation, or amendment of this Interim Order (or the Final Order) or any other order, as provided in section 364(e) of the Bankruptcy Code.

N.      **Business Judgment and Good Faith Pursuant to Section 364(e) of the Bankruptcy Code.**  The terms and conditions of the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and the fees paid and to be paid thereunder (i) are fair, reasonable, and the best available under the circumstances, (ii) reflect the Debtor's exercise of

prudent business judgment consistent with its fiduciary duties, and (iii) are supported by reasonably equivalent value and consideration.  The DIP Facility was negotiated in good faith and at arms' length between the Debtor and the DIP Lender, and the use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protections and benefits of section 364(e) of the Bankruptcy Code.

O.    **Relief Essential; Best Interest.**  The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and personal property.  It is in the best interest of Debtor's estate that the Debtor be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement and the other DIP Financing Agreements.  The Debtor has demonstrated good and sufficient cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The DIP Motion is granted in accordance with the terms and conditions set forth in this Interim Order, the DIP Credit Agreement, and the other DIP Financing Agreements.

**I.    DIP FINANCING.**

A.    **Approval of Entry into the DIP Financing Agreements**.

2.    The Debtor is expressly and immediately authorized, empowered, and directed to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments, certificates, agreements, and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this

Interim Order and the DIP Financing Agreements.  The Debtor is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses, and other amounts described in the DIP Credit Agreement and all other DIP Financing Agreements as such become due, including, without limitation, the Closing Fee, Administrative Fee, Success Fee, Commitment Fee, and reasonable attorneys', financial advisors' and accountants' fees, and disbursements as provided for in the DIP Credit Agreement which amounts, subject to the provisions of Paragraph 45 below, shall not otherwise be subject to approval of this Court.  Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtor enforceable against the Debtor in accordance with their terms.

**B.**     **Authorization to Borrow**.

3.     In order to enable it to continue to operate its business during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, the other DIP Financing Agreements, and the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), the Debtor is hereby authorized under the DIP Facility to borrow up to a total committed amount of $6,000,000.00 in accordance with the terms and conditions of the DIP Credit Agreement.

**C.**     **Application of DIP Proceeds**.

4.     The proceeds of the DIP Facility (net of any amounts used to pay fees, costs, and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with and as may be limited by the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement), solely as follows:

(a)     to pay costs, expenses and fees in connection with the preparation, negotiation, execution and delivery of the DIP Credit Agreement and the other DIP Financing Agreements;

11

(b)      for general operating and working capital purposes, for the payment of transaction expenses, for the payment of fees, expenses, and costs incurred in connection with the Chapter 11 Case, and other proper corporate purposes of Borrower not otherwise prohibited by the terms hereof for working capital, capital expenditures, and other lawful corporate purposes of the Debtor;

(c)      to refinance the Roll-Up Amounts; and

(d)      to fund the Prepetition Indemnity Account (as defined below).

**D.      Conditions Precedent**.

5.      The DIP Lender shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived, as determined by the DIP Lender in its reasonable discretion, in accordance with the DIP Credit Agreement.

**E.      The DIP Liens**.

6.      Effective immediately upon the entry of this Interim Order, the DIP Lender is hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding, enforceable, non-avoidable, and automatically perfected postpetition security interests and Liens (collectively, the "***DIP Liens***") senior and superior in priority to all other secured and unsecured creditors of the Debtor's estates except as otherwise provided in this Interim Order, upon and to all of the following (collectively, the "***DIP Collateral***"):

(a) The Collateral, as defined in the Prepetition Security Agreement, including:

(i)      all Accounts;

(ii)     all Goods, including Equipment, Inventory and Fixtures;

(iii)    all Documents, Instruments and Chattel Paper;

(iv)    all Letters of Credit and Letter-of-Credit Rights;

(v)      all Securities Collateral;

(vi)     all Investment Property;

(vii)    all Intellectual Property Collateral;

(viii)   all Commercial Tort Claims;

(ix)     all General Intangibles;

(x)      all Deposit Accounts;

(xi)     all Supporting Obligations;

(xii)    all books and records relating to the Collateral; and

(xiii)   to the extent not covered by clauses (i) through (xii), all other personal property of the Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

(b)      Bankruptcy Recoveries (as defined below), but only (A) the full amount of any such recovery or settlement thereof to the extent arising under Section 549 of the Bankruptcy Code and (B) all amounts necessary to reimburse the DIP Lender for the amount of the Carve Out, if any, used to finance the pursuit of such recovery or settlement with respect to all Bankruptcy Recoveries, and no other Bankruptcy Recoveries.  As used herein, "Bankruptcy Recoveries" shall mean any claims and causes of action to which the Debtor may be entitled to assert by reason of any avoidance or other power vested in or on behalf of the Debtor or the estate of the Debtor under Chapter 5 of the Bankruptcy Code and any and all recoveries and settlements thereof.

(c)      The proceeds of all of the Debtor's interests in leaseholds, but not the leaseholds themselves, whether or not so perfected prior to the Petition Date.

**F.      DIP Lien Priority.**

7.      The DIP Liens to be created and granted to the DIP Lender, as provided

herein, are:

(a)      created pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code,

(b)      first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or Lien or claim to the DIP Collateral, and

13

(c)        subject only to (i) the Carve Out, and (ii) the Permitted Prior Liens.

The DIP Liens shall secure all DIP Obligations and the proceeds of the DIP Collateral shall be applied in the same order and priority set forth in the DIP Credit Agreement.  The DIP Liens shall not be made subject to or *pari passu* with any Lien or security interest by any court order heretofore or hereafter entered in the Chapter 11 Case and shall be valid and enforceable against any trustee appointed in the Chapter 11 Case, upon the conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each a "***Successor Case***"), and/or upon the dismissal of the Chapter 11 Case.  The DIP Liens shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or the assertion by the Debtor of the "equities of the case" exception of section 552 of the Bankruptcy Code, and, upon entry of the Final Order, shall not be subject to section 506(c) of the Bankruptcy Code.

**G.        Enforceable Obligations**.

8.        The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtor, and shall be enforceable against the Debtor, its estate, and any successors thereto, and their creditors in accordance with their terms.

**H.        Protection of the DIP Lender and Other Rights**.

9.        From and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Financing Agreements and this Interim Order and in compliance with the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

**I.        Superpriority Administrative Claim Status.**

10.        Subject to the Carve Out, all DIP Obligations shall be an allowed superpriority administrative expense claim (the "***DIP Superpriority Claim***" and, together with

the DIP Liens, collectively, the "***DIP Protections***") with priority in the Chapter 11 Case under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.

11.    Other than the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

## II.    U<small>SE OF</small> C<small>ASH</small> C<small>OLLATERAL</small>.

### A.    Authorization to Use Cash Collateral.

12.    Pursuant to the terms and conditions of this Interim Order, the DIP Facility, the DIP Credit Agreement, and the other DIP Financing Agreements, and in accordance with and as may be limited by the budget (as the same may be modified, supplemented, or updated from time to time consistent with the terms of the DIP Credit Agreement, the "***Budget***"), the Debtor is authorized to use Cash Collateral and to use the advances under the DIP Facility during the period commencing immediately after the entry of the Interim Order and terminating upon notice being provided by the DIP Lender to the Debtor that (i) a DIP Order Event of

Default (as defined below) has occurred and is continuing, and (ii) the termination of the DIP Credit Facility.

13.     Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business or other proceeds resulting therefrom, except (x) with respect to the sale of assets as contemplated in the Store Closing Program Motion and the assumption and assignment of leases as contemplated in the APA Motion (as each of those terms is defined in the DIP Credit Agreement), and (y) as otherwise permitted in the DIP Facility under the DIP Credit Agreement and the other DIP Financing Agreements and in accordance with and as may be limited by the Budget (subject to any variances thereto permitted under the terms and conditions of the DIP Credit Agreement).

**B.     Adequate Protection for Prepetition Lender.**

14.     As adequate protection for the interest of the Prepetition Lender in the Prepetition Collateral (including Cash Collateral) on account of the granting of the DIP Liens, subordination to the Carve Out, the Debtor's use of Cash Collateral, and other decline in value arising out of the automatic stay or the Debtor's use, sale, depreciation, or disposition of the Prepetition Collateral, including the disposition of assets as contemplated in the Store Closing Program Motion and the APA Motion, the Prepetition Lender shall receive adequate protection as follows (collectively, "***Adequate Protection***"):

(a)     **Prepetition Replacement Liens**.  Solely to the extent of the diminution in the value of the interest of the Prepetition Lender in the Prepetition Collateral, the Prepetition Lender shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364(d) of the Bankruptcy Code additional and replacement security interests and Liens in the DIP Collateral (the "***Prepetition Replacement Liens***") which shall be junior only to the Carve Out, the DIP Liens securing the DIP Facility, and Permitted Prior Liens.

(b)     **Prepetition Superpriority Claim**.  Solely to the extent of the diminution in the value of the interests of the Prepetition Lender in the Prepetition

Collateral, the Prepetition Lender shall have an allowed superpriority administrative expense claim (the "***Prepetition Superpriority Claim***") which shall have priority (except with respect to (i) the DIP Liens, (ii) the DIP Superpriority Claim, and (iii) the Carve Out), in the Chapter 11 Case under sections 364(c)(1), 503(b), and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 552, 726, 1113, and 1114 of the Bankruptcy Code, and, upon entry of the Final Order, section 506(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment.

Other than the DIP Liens, the DIP Superpriority Claim, and the Carve Out, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330, and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in the Chapter 11 Case, or in any Successor Case, will be senior to, prior to, or on parity with the Prepetition Superpriority Claim.

(c)     **Adequate Protection Payments**.  The Prepetition Lender shall receive adequate protection in the form of the following:

(i)     the current payment of the reasonable documented out-of-pocket costs and expenses of its financial advisors and attorneys,

(ii)     on the first day of each calendar month, commencing November 1, 2012, cash interest at the rates as provided in the Prepetition Financing Agreements,

(iii)     all products and proceeds of the Prepetition Collateral and the DIP Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions thereof, whether or not in the ordinary course, including all proceeds incidental to the Debtor's Store Closing Program (as defined in the DIP Credit Agreement)) regardless of whether such collateral came into existence prior to the Petition Date, shall be applied as follows: (x) first, to reduce the Prepetition Debt until paid in full, and (y) second, to reduce the DIP Obligations until paid in full, and

(iv)     upon entry of the Final Order, payment in full of the remaining Prepetition Debt.

17

(d)    **Adequate Protection Upon Approval of Store Closing Program**.  Upon the disposition of Prepetition Collateral or Post-Petition Collateral as contemplated by the Store Closing Program Motion, including, [including without limitation, the assumption of the Agency Agreement and] payment by the Agent (as defined in the Agency Agreement) of the Guaranteed Amount (as defined in the Agency Agreement), any such Prepetition Collateral and Post-Petition Collateral shall be sold free and clear of the Prepetition Liens, the Prepetition Replacement Liens, and the DIP Liens, ***provided***, ***however***, that such Prepetition Liens, Prepetition Replacement Liens, and DIP Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Interim Order.

(e)    **Adequate Protection Upon Closing of APA Sale**.  Upon the disposition of Prepetition Collateral as contemplated in the APA Motion and closing of the Asset Purchase Agreement, any such Prepetition Collateral shall be sold free and clear of the Prepetition Liens, the Prepetition Replacement Liens, and the DIP Liens, ***provided***, ***however***, that such Prepetition Liens, Prepetition Replacement Liens, and DIP Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Interim Order.

(f)    **Prepetition Indemnity Account**.    Upon entry of the Final Order, the Debtor shall establish an account in the control of the Prepetition Lender (the "***Prepetition Indemnity Account***"), into which the sum of $100,000.00 of Cash Collateral shall be deposited as security for any reimbursement, indemnification, or similar continuing obligations of the Debtor in favor of the Prepetition Lender under the Prepetition Financing Agreements, including without limitation, the provisions of Sections 10.04 (a) and (b) of the Prepetition Credit Agreement (the "***Prepetition Indemnity Obligations***").

(i)    Upon the Challenge Period Termination Date (as defined below) if, as of such date, no party has filed (x) an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in Paragraph 22 hereof, or (y) an adversary proceeding, cause of action, objection, claim, defense, or other challenge against the Prepetition Lender related to the Prepetition Debt, whether in the Chapter 11 Case or independently in another forum, court, or venue (together, a "***Challenge Proceeding***"), all amounts held in the Prepetition Indemnity Account shall be released to the Debtor.

(ii)    The Prepetition Indemnity Obligations shall be secured by a first priority lien on the Prepetition Indemnity Account, and the Prepetition Indemnity Account shall also secure the Prepetition Superpriority Claims.

18

C. **Section 507(b) Reservation for the DIP Lender to Seek Further Adequate Protection.**

15.     Nothing herein shall impair or modify the Prepetition Lender's rights under section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Lender hereunder is insufficient to compensate for the diminution in value of the interest of the Prepetition Lender in the Prepetition Collateral during the Chapter 11 Case or any Successor Case; ***provided***, ***however***, that any section 507(b) claim granted in the Chapter 11 Case to the Prepetition Lender shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

III.    <u>POSTPETITION LIEN PERFECTION</u>.

16.     This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Prepetition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, security agreement, notice of Lien, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement or securities account control agreement) to validate or perfect the DIP Liens and the Prepetition Replacement Liens or to entitle the DIP Liens and the Prepetition Replacement Liens to the priorities granted herein.

17.     Notwithstanding the foregoing, the DIP Lender may, in its discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and

19

documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Chapter 11 Case.

18.    The Debtor shall execute and deliver to the DIP Lender all such financing statements, deeds of trust, mortgages, security agreements, notices of Liens, and other similar instruments and documents as the DIP Lender may reasonably request to evidence, confirm, validate, or perfect, or to ensure the contemplated priority of, the DIP Liens granted pursuant hereto.

19.    The DIP Lender, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording office designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording office shall be authorized to file or record such copy of this Interim Order.

20.    The DIP Lender shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be the successor-in-interest to the Prepetition Lender with respect to all third party notifications in connection with the Prepetition Revolver Financing Agreements, all Prepetition Collateral access agreements, and all other agreements with third parties (including any agreement with a customs broker, freight forwarder, or credit card processor) relating to, or waiving claims against, any Prepetition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtor and including, for the avoidance of doubt, all deposit account control agreements, securities account control agreements, and credit card agreements.

21.    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Financing Agreements as necessary to

(a)    permit the Debtor to grant the Prepetition Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Lender under the DIP Financing Agreements, the DIP Facility, and this Interim Order, and

(b)    authorize the DIP Lender and the Prepetition Lender to retain and apply payments hereunder as provided by the DIP Financing Agreements and this Interim Order.

## IV.    RESERVATION OF CERTAIN THIRD PARTY RIGHTS AND BAR OF CHALLENGES AND CLAIMS.

22.    Nothing in this Interim Order or the DIP Credit Agreement shall prejudice whatever rights any Committee(s) or any other party-in-interest with requisite standing (other than the Debtor) may have to the following:

(a)    to object to or challenge the Debtor's Stipulations, including (i) the validity, extent, perfection, or priority of the security interests and Liens of the Prepetition Lender in and to the Prepetition Collateral, or (ii) the validity, allowability, priority, status, or amount of the Prepetition Debt, or

(b)    to bring suit against the Prepetition Lender in connection with or related to the Prepetition Debt, or the actions or inactions of the Prepetition Lender arising out of or related to the Prepetition Debt;

*provided*, *however*, that unless any official Committee(s) or any other party-in-interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim against the Prepetition Lender in the nature of a setoff, counterclaim, or defense to the Prepetition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Lender), by the later of (x) **sixty (60) days** following the appointment of the first official Committee, or (y) if no official Committee is appointed, **seventy-five (75) days** following entry of the Final Order (collectively, (x) and (y) shall be referred to as the "*Challenge Period*" and the date that is the next calendar day after the termination of the

Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "***Challenge Period Termination Date***").

23.    Upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any official Committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party-in-interest) **shall be deemed to be forever waived and barred**, and the Prepetition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Chapter 11 Case and the Debtor's Stipulations shall be binding on all creditors, interest holders, and parties-in-interest.

24.    To the extent any such objection or complaint is filed, the Prepetition Lender shall be entitled to include the costs and expenses, including but not limited to reasonable attorneys' fees and disbursements, incurred in defending the objection or complaint as part of the Prepetition Debt to the extent permitted pursuant to the relevant Prepetition Financing Agreement.  To the extent any such objection or complaint is filed (or as part of any agreed upon resolution thereof), the Prepetition Lender shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or complaint as part of the Prepetition Debt and as part of the Prepetition Indemnity Obligations which shall be reimbursed by the Debtor, including out of the Prepetition Indemnity Account, and as one of the Prepetition Superpriority Claims, and the Pre-Petition Indemnity Account shall be maintained until the final resolution of all such objections or claims.  The Debtor shall remain liable to the Prepetition Lender for all unpaid Prepetition Indemnity Obligations to the extent that the funds in the Prepetition Indemnity Account are insufficient to satisfy them in full.

## V.    CARVE OUT AND PAYMENT OF PROFESSIONALS.

25.    Subject to the terms and conditions contained in this Paragraph 25, the DIP Liens, DIP Superpriority Claim, the Prepetition Liens, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims are subordinate only to the following (collectively, the "Carve Out"):

(a)    allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6) for fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (collectively, the "U.S. Trustee Fees"); and

(b)    professional fees of, and costs and expenses incurred by, professionals or professional firms retained by the Debtor and of any Committee(s), always as provided in and as may be limited by the Carve Out Budget  (defined below) and allowed by the Court (collectively, the "Case Professionals") in an aggregate amount not to exceed the sum of (x) $150,000 with respect to professionals or professional firms retained by the Debtor (in addition to any retainers held by such professional firms on the Petition Date, and (y) $200,000 with respect to professionals or professional firms retained by the Committee(s) and out-of-pocket costs and expenses incurred by members of the Committee(s).   As used herein, "Carve Out Budget" means that budgetary projection of professional fees and expenses for Case Professionals, on an accrual basis, annexed hereto marked ***Exhibit "3"***.

26.    Notwithstanding anything to the contrary contained herein, so long as no notice of the occurrence of a DIP Order Event of Default shall have been delivered, the Debtor shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. § 330 and 331, as the same may be due and payable and allowed by the Court, but always as provided in and as may be limited by the Carve Out Budget and the same shall not reduce the Carve Out described in Paragraph 1 above.  Further, nothing contained herein shall limit payment of compensation and reimbursement of expenses allowed and payable under 11 U.S.C. § 330 and 331, as the same may be due and payable and allowed by the Court even if they exceed the amounts contained in the Budget or the Carve Out Budget, out of funds other than the Carve Out after (x) the Challenge Period Termination Date with no Challenge having been

23

brought, and (y) the Prepetition Debt has been irrevocably paid in full to the Prepetition Lender and the DIP Obligations have been irrevocably paid in full to the DIP Lender.

27.     Nothing herein, including the inclusion of line items in the Budget or the Carve Out Budget for Case Professionals, shall be construed as consent to the allowance of any professional fees or expenses of the Debtor, of any Committee, or of any person or shall affect the right of the DIP Lender or the Prepetition Lender to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget or in excess of the Carve Out Budget.  Any unused portion of the Carve Out shall at all times remain Cash Collateral as provided herein.

## VI.    COMMITMENT TERMINATION DATE, DIP EVENT OF DEFAULT, AND REMEDIES

### A.    Commitment Termination Date

28.     All DIP Obligations shall be immediately due and payable and all authority to use the proceeds of the DIP Facility and to use Cash Collateral shall cease on the date that is the earliest to occur of any of the following (the "***Commitment Termination Date***"):

    (a)     the date that is six (6) months after the Closing Date;

    (b)     the date on which the maturity of the DIP Obligations is accelerated and the commitments under the DIP Facility (the "***DIP Commitments***") have been irrevocably terminated as a result of the occurrence of an Event of Default (as defined in the DIP Credit Agreement) in accordance with the DIP Credit Agreement;

    (c)     the failure of the Debtor to obtain entry of the Final Order on or before the date which is thirty (30) days after the Closing Date;

    (d)     the closing of a sale of all or substantially all of the assets of the Borrower pursuant to the provisions of Section 363 of the Bankruptcy Code; or

    (e)     the effective date of a chapter 11 plan (a "***Plan***").

**B.    DIP Events of Default.**

29.    The occurrence of the Commitment Termination Date shall constitute a "***DIP Order Event of Default.***"

30.    Unless and until the DIP Obligations have been irrevocably repaid in full in cash (or other arrangements for payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and all DIP Commitments have been irrevocably terminated, the protections afforded to Prepetition Lender and the DIP Lender pursuant to this Interim Order and under the DIP Financing Agreements, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting the Chapter 11 Case into a Successor Case, and the DIP Liens, the DIP Superpriority Claim, the Prepetition Replacement Liens, and the Prepetition Superpriority Claims shall continue in the Chapter 11 Case and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Prepetition Replacement Liens, and Prepetition Superpriority Claims shall maintain their respective priorities as provided by this Interim Order.

**C.    <u>Rights and Remedies Upon DIP Order Event of Default.</u>**

31.    Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that (i) after the occurrence of any DIP Order Event of Default and (ii) at any time thereafter during the continuance of such DIP Order Event of Default, upon **seven (7) days** prior written notice of such occurrence, in each case given to each of (w) the Debtor, (x) counsel to the Debtor, (y) counsel for any Committee(s) (if any) or the thirty (30) largest unsecured creditors, and (z) the U.S. Trustee, the DIP Lender shall be entitled to exercise its rights and remedies in accordance with the DIP Financing Agreements.

25

32.    After expiration of the seven (7) day notice period by the DIP Lender of the occurrence of a DIP Order Event of Default and such DIP Order Event of Default still continuing:

(a)    the Debtor shall continue to deliver and cause the delivery of the proceeds of DIP Collateral to the DIP Lender as provided in the DIP Financing Agreements and this Interim Order;

(b)    the DIP Lender shall continue to apply such proceeds in accordance with the provisions of the DIP Financing Agreements and this Interim Order;

(c)    the Debtor shall have no right to use any of such proceeds, nor any other Cash Collateral, other than towards the satisfaction of the DIP Obligations and the Carve Out; and

(d)    any obligation otherwise imposed on the DIP Lender to provide any loan or advance to the Debtor pursuant to the DIP Facility shall be suspended.

33.    Following the giving of written notice by the DIP Lender of the occurrence of a DIP Order Event of Default, the Debtor and any Committee(s) appointed in the Chapter 11 Case, if any, shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether a DIP Order Event of Default has occurred.  If the Debtor or any such Committee(s) do not contest the occurrence of a DIP Order Event of Default and therefore the right of the DIP Lender to exercise its remedies, or if the Debtor or any such Committee(s) do timely contest the occurrence of a DIP Order Event of Default and the Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the DIP Lender, shall automatically terminate at the end of such seven (7) day notice period.

34.    Subject to the provisions of Paragraphs 31, 32, and 33 above, upon the occurrence of a DIP Order Event of Default, the DIP Lender is authorized to exercise its remedies and proceed under or pursuant to the DIP Financing Agreements; except that, with respect to any of the Debtor's leasehold locations, the DIP Lender's rights shall be limited to such rights (i) as may be ordered by the Court upon motion and notice to the applicable landlord

26

with an opportunity to respond that is reasonable under the circumstances; (ii) to which the applicable landlord agrees in writing with the DIP Lender; or (iii) which the DIP Lender has under applicable non-bankruptcy law.  All proceeds realized from any of the foregoing shall be turned over to the DIP Lender for application to the Carve Out (if not previously funded as provided herein), the DIP Obligations, and the Prepetition Debt under, and in accordance with the provisions of, the DIP Financing Agreements and this Interim Order.

35.     Nothing included herein shall prejudice, impair, or otherwise affect the Prepetition Lender's or the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtor, nor the DIP Lender's rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans and granting financial accommodations under the DIP Credit Agreement.

**D.     <u>No Waiver of Remedies</u>**.

36.     The delay in or the failure of the Prepetition Lender or the DIP Lender to seek relief or otherwise exercise their rights and remedies shall not constitute a waiver of any of the Prepetition Lender's and the DIP Lender's rights and remedies.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights and remedies of the Prepetition Lender or the DIP Lender under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Prepetition Lender and the DIP Lender to (i) request conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissal of the Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case; (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan; or (iii) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) the DIP Lender or the Prepetition Lender may have.

## VII.    CERTAIN LIMITING PROVISIONS

### A.    Section 506(c) Claims and Waiver

37.    Nothing contained in this Interim Order shall be deemed a consent by the DIP Lender or the Prepetition Lender to any charge, Lien, assessment, or claim against the DIP Collateral, the DIP Liens, the Prepetition Collateral, or the Prepetition Replacement Liens under section 506(c) of the Bankruptcy Code or otherwise; *provided*, *however*, that during the Interim Period there shall be no waiver of section 506(c) of the Bankruptcy Code.

38.    As a further condition of the DIP Facility and any obligation of the DIP Lender to make credit extensions pursuant to the DIP Financing Agreements, upon entry of the Final Order, the Debtor (and any successor thereto or any representative thereof, including any trustees appointed in the Chapter 11 Case or any Successor Case) shall be deemed to have waived any rights or benefits of section 506(c) of the Bankruptcy Code.

### B.    Proceeds of Subsequent Financing

39.    Without limiting the provisions and protections of Paragraph 40 below, if at any time prior to the irrevocable repayment in full of all DIP Obligations and the termination of the DIP Lender's obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any Plan with respect to the Debtor, the Debtor's estate, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to sections 364(c)(1) or 364(d) of the Bankruptcy Code in violation of the DIP Financing Agreements, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Lender and applied in reduction of the DIP Obligations.

**C.    Prohibited Orders.**

40.    Unless the DIP Lender has provided its prior written consent or all DIP Obligations have been irrevocably paid in full in cash (or will be irrevocably paid in full in cash upon entry of an order approving indebtedness described in Paragraph 40 above, or other arrangements for the payment of the DIP Obligations satisfactory to the DIP Lender in its sole and exclusive discretion have been made) and all DIP Commitments (as defined below) have terminated, there shall not be entered in the Chapter 11 Case, or in any Successor Case, any order which authorizes any of the following:

(a)    Any modification, stay, vacation or amendment to the DIP Orders to which the DIP Lender has not consented;

(b)    A priority claim or administrative expense or unsecured claim against the Borrower (now existing or hereafter arising or any kind or nature whatsoever, including, without limitation, any administrative expense of the kind specified in sections 105, 326, 328, 330, 331, 364(c), 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 or 1114 of the Bankruptcy Code) equal or superior to the priority claim of the DIP Lender in respect of the Obligations, except with respect to the Carve Out;

(c)    Any Lien on any DIP Collateral having a priority equal or superior to the Lien securing the DIP Obligations, except (a) with respect to the Carve Out, or (b) for the Permitted Prior Liens;

(d)    Any order which authorizes the return of any of the Borrower's property pursuant to section 546(h) of the Bankruptcy Code; or

(e)    Any order which authorizes the payment of any Indebtedness (other than those under the Existing Credit Facility, Indebtedness reflected in the Approved Budget, and other Indebtedness approved by the DIP Lender, in each case incurred prior to the Petition Date or the grant of "adequate protection" (whether payment in cash or transfer of property) with respect to any such Indebtedness which is secured by a Lien other than as set forth in the DIP Orders).

**D.    Restrictions on Disposition of Collateral.**

41.    The Debtor shall not do the following:

29

(a)     sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the requisite DIP Lender required under the DIP Financing Agreements (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or an order of this Court), except for the following:

(i)     sales of the Debtor's Inventory in the ordinary course of business,

(ii)    as part of the disposition of assets as contemplated in the Store Closing Program Motion and the APA Motion, or

(iii)   except as otherwise provided for in the DIP Financing Agreements and this Interim Order and approved by the Court, or

(b)     assume, reject, or assign any Lease without the prior consultation with the DIP Lender, except as contemplated in the Store Closing Motion, the APA Motion, a Plan, or as otherwise provided for in the DIP Financing Agreements.

## VIII.  OTHER RIGHTS AND OBLIGATIONS

### A.      Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order.

42.     Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended, or vacated by a subsequent order of this or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code and, no such appeal, modification, amendment, or vacation shall affect the validity and enforceability of any advances made hereunder or the Liens or priority authorized or created hereby.

43.     Notwithstanding any such modification, amendment, or vacation, any claim granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment, or vacation of any DIP Protections granted to the DIP Lender shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges, and benefits, including the DIP

Protections granted herein, with respect to any such claim.  Since the loans made pursuant to the DIP Facility are made in reliance on this Interim Order, the obligations owed the DIP Lender prior to the effective date of any stay, modification, or vacation of this Interim Order shall not, as a result of any subsequent order in the Chapter 11 Case or in any Successor Case, be subordinated, lose their Lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the Liens and claims granted to the DIP Lender under this Interim Order and/or the DIP Financing Agreements.

**B.    DIP Lender Expenses.**

44.    As provided in the DIP Financing Agreements, all reasonable out-of-pocket costs and expenses of the DIP Lender in connection with the DIP Financing Agreements, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees and disbursements, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement obligations with respect to fees and expenses, and other out of pocket expenses will be paid by the Debtor, whether or not the transactions contemplated hereby are consummated.  Payment of such fees shall not be subject to allowance by the Court; ***provided***, ***however***, the Debtor may seek a determination by the Court whether such fees and expenses are reasonable.  Under no circumstances shall professionals for the DIP Lender or Prepetition Lender be required to comply with the U.S. Trustee fee guidelines; ***provided***, ***however***, the Debtor shall provide to the Office of the United States Trustee for [Region 2] a copy of any invoices for professional fees and expenses provided to the Debtor during the pendency of the Debtor's Chapter 11 Case.

**C.    Binding Effect**.

45.    The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Lender, the Debtor, and their respective successors and

assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estates of the Debtor), any Committee(s) (subject to the provisions of Paragraphs 22-24 above), whether in the Chapter 11 Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 case.

      **D.**    **No Third Party Rights**.

      46.    Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

      **E.**    **No Marshaling**.

      47.    Neither the DIP Lender nor the Prepetition Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or Prepetition Collateral, as applicable.

      **F.**    **Section 552(b) of the Bankruptcy Code.**

      48.    The DIP Lender and the Prepetition Lender shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the Debtor shall not assert that the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall apply to the DIP Lender or the Prepetition Lender with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

      **G.**    **Amendments**.

      49.    The Debtor and the DIP Lender may amend, modify, supplement, or waive any provision of the DIP Financing Agreements without further approval of the Court unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the Default Rate), (ii) increases the DIP Commitments, or (iii) changes the maturity date of the DIP Facility. Except as set forth above, all waivers,

modifications, or amendments of any of the provisions hereof shall not be effective unless set forth in writing, signed by on behalf of the Debtor and the DIP Lender (after having obtained the approval of the DIP Lender as provided in the DIP Financing Agreements) and approved by the Court.

**H.     Survival of Interim Order**.

50.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:

(a)     confirming any Plan in the Chapter 11 Case,

(b)     converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code,

(c)     to the extent authorized by applicable law, dismissing the Chapter 11 Case,

(d)     withdrawing of the reference of the Chapter 11 Case from this Court, or

(e)     providing for abstention from handling or retaining of jurisdiction of the Chapter 11 Case in this Court.

51.     The terms and provisions of this Interim Order including the DIP Protections granted pursuant to this Interim Order and the DIP Financing Agreements and any protections granted the Prepetition Lender shall continue in full force and effect notwithstanding the entry of such order, and such DIP Protections and protections for the Prepetition Lender shall maintain their priority as provided by this Interim Order until all of the DIP Obligations of the Debtor to the DIP Lender pursuant to the DIP Financing Agreements and the Prepetition Debt has been irrevocably paid in full and discharged (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms).

**I.      Inconsistency**.

52.      In the event of any inconsistency between the terms and conditions of the DIP Financing Agreements and of this Interim Order, the provisions of this Interim Order shall govern and control.

**J.      Enforceability**.

53.      This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

**K.      Objections Overruled**.

54.      All objections to the DIP Motion to the extent not withdrawn or resolved, are hereby overruled.

**L.      Waiver of Any Applicable Stay**.

55.      Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

**M.      Proofs of Claim.**

56.      The Prepetition Lender and the DIP Lender will not be required to file proofs of claim in the Chapter 11 Case or in any Successor Case.

**N.      Headings.**

57.      The headings in this Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Order.

**O.      Retention of Jurisdiction**.

58.      The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

## IX.    FINAL HEARING.

59.    **The Final Hearing on the Motion shall be heard before this Court on October 31, 2012 at 10:00 a.m. (Prevailing Central Time) at the United States Bankruptcy Court for the Eastern District of Missouri, Thomas F. Eagleton United States Courthouse, 4th Floor, 111 South Tenth Street, St. Louis, MO 63102-1116, Courtroom 7 South.**

60.    If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented jointly by the Debtor and by the DIP Lender and entered by this Court.

61.    Any party in interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file same with the Court and serve (so as to be received) such objection no later than **October 26, 2012 at 4:00 p.m. (Prevailing Central Time)** on the following parties:

| | |
|---|---|
| ***Debtor***<br>Bakers Footwear Group, Inc.<br>2815 Scott Avenue<br>St. Louis, Missouri 63103<br>Attn:  Charles R. Daniel, III<br>E-mail: cdaniel@bfgstl.com<br>Fax:  (314) 621-1018 | ***Office of the U.S. Trustee***<br>Office of the United States Trustee<br>111 S. 10th St., Room 6.353<br>St. Louis, Missouri  63102<br>Attn:  Paul A. Randolph, Esq. |
| ***Counsel for the Debtor***<br>Bryan Cave LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 360<br>St. Louis, Missouri  63102<br>Attn: Brian C. Walsh, Esq.<br>E-mail: brian.walsh@bryancave.com<br>Fax:  (314) 259-2020 | . |
| ***Counsel for the DIP Lender***<br>Riemer & Braunstein LLP<br>Three Center Plaza,<br>Boston, Massachusetts 02108<br>Attn: Donald E. Rothman, Esq.<br>E-mail: drothman@riemerlaw.com<br>Fax: (617) 880-3456<br><br>And | |

35

| Spencer, Fane, Britt & Brown, LLP<br>1000 Walnut Street, Suite 1400<br>Kansas City, MO 64106-6214<br>Attn:  Lisa Epps Dade<br>E-mail: leppsdade@spencerfane.com<br>Fax: (816) 474-3216 | |

62.    The Debtor is directed to serve a copy of this Order on all parties on the attached distribution list no later than 7 days after the date of this Order and to file a certificate of service no later than 24 hours after service.

KATHY A. SURRATT-STATES
U.S. Bankruptcy Judge

DATED:  October 5, 2012
St. Louis, Missouri
jjh

36

# DISTRIBUTION LIST

Brian C. Walsh, Esq.
Bryan Cave LLP
211 N. Broadway, Ste. 3600
St. Louis, MO 63102

Office of the United Stated Trustee
Thomas F. Eagleton U.S. Courthouse
111 South Tenth Street, Room 6.353
St. Louis, MO 63102

Donald E. Rothman, Esq.
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA 02108

Lisa Epps Dade
Spencer, Fane, Britt & Brown, LLP
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-6214

EAST MOUNT SHOES LTD.
Attn:   Officer or Managing/General Agent
2FL, No. 60 Ma-Yuan W. St.
Pei-Tun Distribution
Taichung, Taiwan, ROC

EAST MOUNT SHOES LTD.
Attn:   Ed Rosenfeld
          Adesso Madden
5216 Barnett Ave.
Long Island, NY 11104

STEVEN MADDEN, LTD.
Attn:   Officer or Managing/General Agent
5216 Barnett Ave.
Long Island, NY 11104

STEVEN MADDEN, LTD.
Attn:   Ed Rosenfeld
          Adesso Madden
5216 Barnett Ave.
Long Island, NY 11104

THE H COMPANY IP LLC
Attn:   Officer or Managing/General Agent
1201 West 5th Street, T-1100
Los Angeles, CA 90017

THE H COMPANY IP LLC
Attn:   Ben Malka
1201 West 5th Street, T-1100
Los Angeles, CA 90017

BOB & BOBBY, INC.
Attn:   Officer or Managing/General Agent
2330 Pontius Ave, Suite 101
Los Angeles, CA 90064

BOB & BOBBY, INC.
Attn:   Bob Keely
2330 Pontius Ave, Suite 101
Los Angeles, CA 90064

GENERAL GROWTH PROPERTIES, INC.
Attn:   Officer or Managing/General Agent
110 North Wacker Drive
Chicago, IL 60606

GENERAL GROWTH PROPERTIES, INC.
Attn:   Alan Barocus
110 North Wacker Drive
Chicago, IL 60606

ADJUNCT TRADING HK LIMITED
Attn:   Officer or Managing/General Agent
HSBC Hong Kong
1 Queen's Road Central
Central, Hong Kong

ADJUNCT TRADING HK LIMITED
Attn:   Diane Butrus
          Diba Shoes
3630 Corporate Trail Drive
Earth City, MO 63045-1122

STEP PERFECT
Attn:   Officer or Managing/General Agent
Unit 1005,10/F., Tower B,
Hunghom Commercial Ctr
37 Ma Tau Wai Road
Hunghom, Kowloon,
Hong Kong

STEP PERFECT
Attn:   Greg Goldstein, GGI
169 West 78th Street
New York, NY 10024

DOLCE VITA FOOTWEAR INC.
Attn:   Officer or Managing/General Agent
111 S. Jackson St.
Seattle, WA 98104

DOLCE VITA FOOTWEAR INC.
Attn:   Tim Price
111 S. Jackson St.
Seattle, WA 98104

ANDREW N. BAUR REVOCABLE
TRUST
Attn:   Richard Baur
165 N. Meramec, Suite 210
St. Louis, MO 63105

MASTERSHIP INTERNATIONAL CO.,
LTD.
Attn:   Officer or Managing/General Agent
Room 8, 6F, #123 Sec. 3
Taichung Kang Road
Taichung City, Taiwan ROC

MASTERSHIP INTERNATIONAL CO.,
LTD.
Attn:   Chris Calcagno, MIA
513 Round Hollow Lane
Southlake, TX 76092

PACIFIC WHOLESALE INC.
Attn:   Officer or Managing/General Agent
5252 Bolsa Ave
Huntington Beach, CA 92647

PACIFIC WHOLESALE INC.
Attn:   Charles Greer
5252 Bolsa Ave
Huntington Beach, CA 92647

SIMON PROPERTY GROUP, LP
Attn:   Officer or Managing/General Agent
225 West Washington Street
Indianapolis, IN 46204

SIMON PROPERTY GROUP, LP
Attn:   Rick Sokolov
225 West Washington Street
Indianapolis, IN 46204

GOOD EARTH
Attn:   Officer or Managing/General Agent
Room 1805, 18/F, 12, TakHing Street
Jordan, Kowloon,
Hong Kong

GOOD EARTH
Attn:   Joseph Chang Chainson
301 N. Rice Avenue
Oxnard, CA 93030

TGL LTD. (HK)
Attn:   Officer or Managing/General Agent
Room 1101, Sunbem Centre
27 Shing Yip Street
Kwun Tong, Kwoloon,
Hong Kong

TGL LTD. (HK)
Attn:   Josephine Di Benedetto
Pacific Worldwide
20 West 33rd Street, 11th Floor
New York, NY 10001

WESTFIELD LLC
Attn:   Officer or Managing/General Agent
11601 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90025-0509

2

WESTFIELD LLC
Attn:   Scott Grossman
11601 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90025-0509

3 DEE INTERNATIONAL, INC.
Attn:   Officer or Managing/General Agent
300 Oceangate, Suite 1450
Long Beach, CA 90802

3 DEE INTERNATIONAL, INC.
Attn:   Ed Rosenfeld
        Adesso Madden
5216 Barnett Ave.
Long Island, NY 11104

BROWN PACIFIC TRADING LTD.
Attn:   Officer or Managing/General Agent
Flat L 12th Floor, Shield Industrial Centre
84-92 Chai Wan Kok Street
Tsuen Wan, N.T Hong Kong

BROWN PACIFIC TRADING LTD.
Attn:   Caine Phorn Cels
3485 South La Cienega Blvd.
Los Angeles, CA 90016

LINN H. BEALKE REVOCABLE TRUST
Attn:   Linn Bealke
305 Carlyle Lake Drive
St. Louis, MO 63141

LOUIS N. GOLDRING REVOCABLE
TRUST DTD. 4/15/97
Attn:   Louis Goldring
21 Upper Ladue Road
St. Louis, MO 63124

MISSISSIPPI VALLEY CAPITAL, LLC
Attn:   Officer or Managing/General Agent
101 S. Hanley, Suite 1250
St. Louis, MO 63105

MISSISSIPPI VALLEY CAPITAL, LLC
Attn:   Scott Fesler
101 S. Hanley, Suite 1250
St. Louis, MO 63105

Meridian Leasing Corporation
Attn:  Officer or Managing/General Agent
Nine Parkway North
Suite 500
Deerfield, IL 60015

General Electric Capital Corporation
Attn:  Officer or Managing/General Agent
P.O. Box 35701
Billings, MT 59107-5701

Leaf Financial Corporation
Attn:  Officer or Managing/General Agent
1845 Walnut Street
Suite 1000
Philadelphia, PA 19103

Key Equipment Finance, a division of
Key Corporation Capital Inc.
Attn:  Officer or Managing/General Agent
66 South Pearl Street
Albany, NY 12207

General Electric Capital Corporation
901 Main Ave
Norwalk, CT 06828