UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | Case No.: 12-49658-705 | |
| **Bakers Footwear Group, Inc.,** | ) | | |
| | ) | Chapter 7 | |
| Debtor. | ) | | |
| | ) | **Hearing Date:** | May 1, 2013 |
| | ) | **Hearing Time:** | 10:00 a.m. |
| | ) | **Location:** | Courtroom 7 South |

**SUPPLEMENT TO JOINT MOTION OF TRUSTEE AND SALUS CAPITAL PARTNERS, LLC FOR EN7TRY OF ORDER (A) FINDING DIP LENDER HAS BEEN PAID IN FULL, (B) SEEKING AUTHORITY TO RETURN CASH COLLATERAL TO TRUSTEE, (C) FINDING DIP LENDER HAS NO FURTHER OBLIGATIONS TO THE TRUSTEE, THE ESTATE OR CREDITORS, (D) FINDING THAT ALL DIP LIENS ARE RELEASED, (E) FINDING THAT THE ESTATE HAS NO FURTHER <u>OBLIGATIONS TO DIP LENDER, AND (F) GRANTING RELATED RELIEF</u>**

COME NOW, Robert J. Blackwell, the trustee (the "**Trustee**") of the bankruptcy estate of Bakers Footwear Group, Inc. (the "**Estate**") in the above-captioned chapter 7 bankruptcy case (the "**Case**"), and Salus Capital Partners, LLC, as Administrative Agent, Collateral Agent and Lender (in such capacities, the "**DIP Lender**"), and file this supplement (the "**Supplemental Motion**") to their motion filed on March 13, 2013 (Dkt. No. 718) (the "**Initial Motion**") seeking the entry of an order: (a) finding that all of the DIP Obligations have been irrevocably paid in full and discharged; (b) authorizing the DIP Lender to return cash collateral to the Trustee; (c) finding that the DIP Lender has no further obligations in or related to this Case; (d) finding that any and all DIP Liens (as defined in the DIP Order referred to in the Initial Motion) are hereby, and forever, released; (e) finding that the Estate has no further obligations of any kind whatsoever to the DIP Lender; and (f) granting related relief.[1]

---
[1] Capitalized terms used herein but not otherwise defined herein shall have the meanings set forth in the Initial Motion.

In addition to the relief requested in the Initial Motion, the Trustee and the DIP Lender hereby move this Court for the entry of an order finding that the Estate and the DIP Lender have no further post-petition obligations owing to Diba Imports, L.P., Demand Shoes, LLC, Diba Far East, LLC, Adjunct Trading HK Limited, and C and C Accord, Ltd. (collectively the "**Diba Entities**") and, as a result, the DIP Lender is not required to honor a presentation made by the Diba Entities with respect to a letter of credit issued by the DIP Lender.

As set forth in greater detail below, the DIP Lender and the Trustee have a good faith reason to believe that no post-petition amounts are owed to the Diba Entities. Indeed, the DIP Lender and the Trustee negotiated the terms of the Initial Motion at length on that basis. The Diba Entities have received more than sufficient notice of the developments in this case,[2] and the DIP Lender notified the Diba Entities more than two months ago that the Debtor had confirmed that no further post-petition invoices to the Diba Entities remained outstanding. Nonetheless, the Diba Entities, without any explanation, sought to draw on the letter of credit *two days* before the hearing on the Initial Motion. The Diba Entities have refused to provide any documentation in support of its request, despite several requests from the DIP Lender for such information. Moreover, the DIP Lender asserts that the amount of the DIP Lender's secured, super-priority claim against the Estate will be increased by every dollar paid to the Diba Entities, thereby adversely affecting other creditors and the Estate.

---

[2] The Diba Entities have received all material notices in this case since the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code on October 3, 2012. Diane Butrus ("Butrus"), a principal of the Diba Entities, has been listed in each of the eight Master Notice Lists filed in this case, including the first Master Service and Notice List filed by Debtor on October 5, 2012. Butrus is listed as the individual to receive notifications for each of the Diba Entities. In addition, Jayne Neal served as Creditor Committee Chair in the Debtor's chapter 11 bankruptcy case on behalf of Adjunct Trading HK Limited, one of the Diba Entities.

In support of this Supplemental Motion, the Trustee and the DIP Lender respectfully state as follows:

**Background**

1. On December 4, 2012, at the Debtor's request, the DIP Lender issued a Standby Letter of Credit (the "**Letter of Credit**") to the Diba Entities pursuant to the terms of the DIP Credit Agreement in the amount of $1,000,000 (One Million Dollars) to facilitate post-petition transactions between the Debtor and the Diba Entities.

2. On or about December 20, 2012, the Debtor defaulted under the DIP Credit Agreement and the DIP Order. Over the next few weeks, the Debtor and the DIP Lender worked extensively to negotiate an agreement to sell a material portion of the Debtor's assets to a third party. Unfortunately, that sale did not materialize and, ultimately, on January 14, 2013, the Debtor filed a motion seeking to convert the case to chapter 7. (Dkt. No. 559.)

3. During this period, the Debtor represented to the DIP Lender that no amounts were owed to the Diba Entities, other than an invoice in the amount of $32,504.40. On information and belief, the Debtor paid that invoice in full via check on or about January 14, 2013.

4. On January 23, 2013, the DIP Lender sent a letter to the Diba Entities, with attention to Ms. Butrus, informing the Diba Entities that the Debtor had confirmed that "all invoices issued by [the Diba Entities] for trade accounts payable have been paid in cash, and that no other invoices remain outstanding" (the "**Confirmation Letter**"). On January 27, 2013, Ms. Butrus sent the DIP Lender the following response to the Confirmation Letter: "We will contact you shortly, through our attorney, regarding the Letter of Credit and outstanding unpaid invoices."

5. The DIP Lender did not receive any further communications from the Diba Entities for over two months. During that period, the Trustee conducted a sale of substantially all of the Debtor's remaining assets, which the DIP Lender supported based on its good faith assumptions regarding the amounts owed to it. Such assumptions were based, in part, on representations made by the Debtor that no amounts were owed to the Diba Entities.

6. Subsequently, on March 25, 2013, the DIP Lender received a letter from the Diba Entities (signed on behalf of each entity by Butrus) requesting a draw on the Letter of Credit in the amount of $403,749.70 (the "**Draw Letter**"). The Draw Letter provided no explanation as to why the Diba Entities allegedly are owed $403,749.70 by the Estate. As a result, that same day the DIP Lender sent an email to Ms. Butrus notifying her that, per the Confirmation Letter, it had confirmed with the Debtor that all invoices issued by the Diba Entities for trade accounts payable had been paid in cash and that no other invoices remained outstanding. The DIP Lender further requested that the Diba Entities provide documentation in support of the Draw Letter, including copies of relevant invoices and any demands made on the Debtor in respect of such invoices.

7. By letter dated March 26, 2013, the Diba Entities, through their counsel, again demanded a draw of $403,749.40 on the Letter of Credit and refused the DIP Lender's request for documentation supporting its draw request.

8. On March 28, 2013, counsel for the DIP Lender reiterated the request (via telephone) for additional documentation to counsel for the Diba Entities. On April 2, 2013, counsel for the Diba Entities informed counsel for the DIP Lender (via email) that the Diba Entities would not provide any such information.

9. On April 3, 2013, the DIP Lender sent a letter notifying the Diba Entities that the DIP Lender would dishonor the presentation against the Letter of Credit. As the basis for the

dishonor of the presentation, the DIP Lender stated: "We were previously advised by the Debtor, and have a good faith reason to believe that no amounts are due from the Debtor to you. As a result, upon receipt of your presentation we immediately requested that you provide information demonstrating that, in fact, the Debtor owes money to you. You have advised us that you will not do so."

## Relief Requested

10. By this Supplemental Motion, the Trustee and the DIP Lender seek the entry of an order finding (in addition to the relief requested in their Initial Motion) that no amounts are owed by the Estate or the DIP Lender to the Diba Entities, and as such, the DIP Lender is not required to honor the presentation made by the Diba Entities with respect to the Letter of Credit.

11. As set forth in greater detail above, the DIP Lender and the Trustee have a good faith reason to believe that no post-petition amounts are owed to the Diba Entities. The DIP Lender contends the Debtor represented that, in accordance with its records, no post-petition amounts were owed to the Diba Entities. The Trustee is still in the process of reviewing the Debtor's records, but at this time, with the exception of the Draw Letter, the Trustee has no reason to believe otherwise. Indeed, the DIP Lender and the Trustee negotiated the terms of the Initial Motion at length, and the DIP Lender supported the sale of the Debtor's assets conducted by the Trustee on that basis. In addition, the DIP Lender notified the Diba Entities more than two months ago via the Confirmation Letter that the Debtor had confirmed that all invoices issued by the Diba Entities for trade accounts payable had been paid in cash, and that no other invoices remain outstanding. Nonetheless, the Diba Entities, without any explanation, have sought to draw on the Letter of Credit in the amount of $403,749.70. The Diba Entities have refused, despite repeated requests from the DIP Lender, to provide *any* documentation in support

thereof. Accordingly, the DIP Lender, with the support of the Trustee, has had no choice but to refuse to honor the draw request of the Diba Entities.

12. Moreover, it will be detrimental for the Estate and other creditors in the event the DIP Lender is required to honor the Diba Entities' draw request. As set forth in the Initial Motion, the DIP Lender continues to hold $621,907.73 of the Estate's cash in the Collection Account (as defined in the Initial Motion), over which the DIP Lender has sole dominion and control. In accordance with the DIP Credit Agreement, the DIP Lender asserts that it is entitled to continue to hold such funds as collateral security for the DIP Obligations, including, without limitation, any contingent obligations with respect to letters of credit (including the Letter of Credit issued for the benefit of the Diba Entities). In addition, the DIP Lender asserts a super-priority lien on the proceeds from the sale to Zigi pursuant to the terms of the Loan Documents and the Sale Order, as well as its DIP Liens on all other deposits and assets of the Estate.

13. Without a determination from the Court that no amounts are owed by either the Estate or the DIP Lender to the Diba Entities, and that the DIP Lender is not required to honor the presentation made by the Diba Entities with respect to the Letter of Credit, the DIP Lender will continue to hold the funds in the Collection Account in order to satisfy any obligations that may arise under the Letter of Credit. In order to further secure such obligations, the DIP Lender also will continue to maintain that it has a lien on the Zigi sale proceeds as well as its DIP Liens on all other deposits and assets of the Estate. As a result, the Trustee may be delayed in his efforts to use such funds to pay the costs and expenses associated with winding-down the Estate and otherwise bring this Case to a close.

### Notice

14.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) all parties listed on the Master Notice List, last updated on January 10, 2013; (b) the Diba Entities; (c) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (d) all persons or entities known to the Trustee that have or have asserted a chapter 11 administrative expense claim. In light of the nature of the relief requested herein, the Trustee and the DIP Lender submit that no other or further notice is necessary.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY.]

WHEREFORE, the Trustee and the DIP Lender respectfully request that this Court enter an order, in the form attached as <u>Exhibit A</u> hereto, granting the relief requested herein and in the Initial Motion and that it grant the Trustee and the DIP Lender such other and further relief as is just and proper.

Dated: April 9, 2013

Respectfully submitted,

ARMSTRONG TEASDALE LLP


/s/ John Talbot Sant, Jr.
John Talbot (Tal) Sant, Jr.
Attorneys for DIP Lender
7700 Forsyth Boulevard
Suite 1800
St. Louis, Missouri 63105
(314) 621-5070 / Fax (314) 612-2284
Email:  jsant@armstrongteasdale.com


BLACKWELL & ASSOCIATES, P.C.


_____
Steven N. Beck / 61121MO
Attorneys for Trustee
2678 Babble Creek, P.O. Box 310
O'Fallon, Missouri  63368-8336
(636) 240-3632 / Fax (636) 240-6803
Email:  sbeck@blackwell-lawfirm.com

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No.: 12-49658-705 |
| **Bakers Footwear Group, Inc.,** ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |

**ORDER GRANTING JOINT MOTION OF TRUSTEE AND SALUS CAPITAL PARTNERS, LLC FOR ENTRY OF ORDER (A) FINDING DIP LENDER HAS BEEN PAID IN FULL, (B) SEEKING AUTHORITY TO RETURN CASH COLLATERAL TO TRUSTEE, (C) FINDING DIP LENDER HAS NO FURTHER OBLIGATIONS TO THE TRUSTEE, THE ESTATE OR CREDITORS, (D) FINDING THAT ALL DIP LIENS ARE RELEASED, (E) FINDING THAT THE ESTATE HAS NO FURTHER OBLIGATIONS TO DIP LENDER, AND (F) GRANTING RELATED RELIEF**

Upon review of the Joint Motion and Supplemental Joint Motion of Trustee and Salus Capital Partners, LLC for Entry of Order (A) Finding DIP Lender Has Been Paid in Full, (B) Seeking Authority to Return Cash Collateral to Trustee, (C) Finding DIP Lender Has No Further Obligations to the Trustee, the Estate or Creditors, (D) Finding That All DIP Liens are Released, (E) Finding That the Estate Has No Further Obligations to DIP Lender, (F) Finding That the Estate and the DIP Lender Have No Obligation Owing to Diba Imports, L.P., Demand Shoes, LLC, Diba Far East, LLC, Adjunct Trading HK Limited, and C and C Accord, Ltd. and (G) Granting Related Relief (the "**Motions**") filed by Robert J. Blackwell, the trustee (the "**Trustee**") of the bankruptcy estate of Bakers Footwear Group, Inc. (the "**Estate**") in the above-captioned chapter 7 bankruptcy case (the "**Case**"), and Salus Capital Partners, LLC, as Administrative Agent, Collateral Agent and Lender (in such capacities, the "**DIP Lender**"), the Court **FINDS** that due and proper notice of the Motions has been given and that good and sufficient cause exists for the entry of an order granting the relief requested in the Motions,

**HOLDS** that it is proper to grant the relief requested on that basis, and accordingly **ORDERS** as follows:

**IT IS HEREBY ORDERED** that the Motions be **GRANTED** as set forth herein;

**IT IS HEREBY FURTHER ORDERED** that all DIP Obligations (as defined in the DIP Order referenced in the Motions) shall be deemed irrevocably paid in full and discharged;

**IT IS HEREBY FURTHER ORDERED** that upon payment to the Trustee of the Cash Collateral in the amount of $621,907.73, and subject to its obligation below to promptly return any additional Estate funds it may receive to the Trustee, the DIP Lender shall have no further obligations in or related to this Case upon the time for appeal or to seek permission to appeal this Order having expired without an appeal (or, if appealed, this Order having been affirmed in its entirety, or in a manner satisfactory to the Trustee, by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review), including without limitation to the Trustee, the Estate or the creditors thereof (including any chapter 7 or 11 administrative expense claimant), and, without limiting the foregoing, the DIP Lender shall have no further obligations with respect to the Carve Out and shall be relieved of any obligations under the Conversion Order;

**IT IS HEREBY FURTHER ORDERED** that, as consideration for the foregoing relief granted in favor of the DIP Lender, the DIP Lender shall return to the Trustee cash collateral in the amount of $621,907.73 (which includes cash, in the amount of $350,000, that would have been used by the DIP Lender to fund the Carve Out but for the conversion of the Case) and shall return to the Trustee any other funds of the Estate it may receive on or after March 13, 2013;

**IT IS HEREBY FURTHER ORDERED** that, as consideration for the foregoing relief granted in favor of the DIP Lender, any and all DIP Liens (as defined in the DIP Order

referenced in the Motion) shall be released automatically, without any further action by the Trustee or the DIP Lender, upon the time for appeal or to seek permission to appeal this Order having expired without an appeal (or, if appealed, this Order having been affirmed in its entirety, or in a manner satisfactory to the DIP Lender, by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review);

**IT IS HEREBY FURTHER ORDERED** that no amounts are owed by the Estate and the DIP Lender to the Diba Entities, that the DIP Lender is not required to honor a presentation made by the Diba Entities with respect to the Letter of Credit, and that the Letter of Credit is effectively terminated; and

**IT IS HEREBY FURTHER ORDERED** that the Estate has no further obligations of any kind whatsoever to the DIP Lender, including but not limited to any claims, known or unknown, the DIP Lender has or may have against the Estate.

**DATED THIS ____ DAY OF _____, 2013.**