UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

In re:                                    )
                                          )   Case Number  **12-49658-705**
**Bakers Footwear Group, Inc.,**          )   Chapter 7
                                          )   Hearing Date  **May 29, 2013**
            Debtor.                       )   Hearing Time  **10:00 a.m.**
                                          )   Hearing Location  **7th Floor South**
                                          )

## JOINT MOTION BY CHAPTER 7 TRUSTEE, SALUS CAPITAL PARTNERS, LLC AND DIBA IMPORTS, L.P. PURSUANT TO FED. R. BANKR. P. 9019 <u>FOR AN ORDER APPROVING STIPULATION OF SETTLEMENT</u>

WARNING:  Any response or objection shall be filed with the Court by May 28, 2013.   (See L.R. 9013-1(B) and 9013-2(B), or other Rules as applicable).  A copy shall be promptly served upon the undersigned.  Failure to file a timely response may result in the Court granting the relief requested prior to the hearing date.

PLEASE TAKE NOTICE that a hearing to consider the this Motion will be held on May 29, 2013 at 10:00 a.m., on an expedited basis, before the Honorable Charles E. Rendlen, United States Bankruptcy Court, 111 South Tenth Street, 7th Floor South Courtroom, St. Louis, Missouri  63102.

Robert J. Blackwell, the chapter 7 trustee (the "**Trustee**") for the estate of Bakers Footwear Group, Inc. (the "**Estate**"), Salus Capital Partners, LLC (the "**DIP Lender**"), and Diba Imports, L.P.[1] ("**Diba**", and together with the Trustee and Salus, collectively referred to herein as the "**Parties**") by and through their undersigned counsel, move for entry of an Order pursuant to Fed. R. Bankr. P. 9019 (the "**Motion**") approving a stipulation of settlement (the "**Stipulation**") among the Trustee, DIP Lender, and Diba, and in support thereof, respectfully state as follows:

---

[1] Diba as defined herein shall be deemed to include such affiliates, agents or assignees, including without limitation, Demand Shoes, LLC, Diba Far East, LLC, Adjunct Trading HK Limited, and C and C Accord, Ltd.

## I. Introduction and Jurisdiction

1.  By this Motion, the Parties respectfully request an Order pursuant to Fed. R. Bankr. P. 9019 approving a stipulation of settlement among the Parties. A copy of the stipulation of settlement is attached hereto as **Exhibit A**.

2.  This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), (M) and (O).

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## II. Relevant Background

4.  On October 3, 2012, the Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United State Bankruptcy Court for the Eastern District of Missouri (the "**Court**"), with the Debtor continuing to operate its business as a debtor-in-possession.

5.  On November 15, 2012, the DIP Lender and the Debtor entered into the Amended and Restated Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement (the "**DIP Credit Agreement**"), pursuant to which the DIP Lender agreed to provide the Debtor with, among other things, capital necessary to continue its business operations and preserve and administer the value of the Estate.

6.  Also on November 15, 2012, the Court entered an order (the "**DIP Order**") approving the post-petition financing provided by the DIP Lender. Pursuant to the DIP Order, the DIP Lender was granted (a) a first priority, valid, perfected and enforceable lien, subject only to the Carve Out and Permitted Prior Liens (each as defined in the DIP Order), upon substantially all of the Debtor's real and personal property and (b) a super-priority

2

administrative claim in respect of all obligations under the DIP Financing Agreements (as defined in the DIP Order), subject to the Carve Out as set forth in the DIP Order.

7. On December 4, 2012, at the Debtor's request, the DIP Lender issued a Standby Letter of Credit (the "**Letter of Credit**") to Diba pursuant to the terms of the DIP Credit Agreement in the amount of $1,000,000 (One Million Dollars) to facilitate post-petition transactions between the Debtor and Diba.

8. On January 18, 2013, the Court entered an order converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code and, on January 21, 2013, the Trustee was appointed the chapter 7 trustee.

9. On January 22, 2013, the Court entered an order authorizing, inter alia, the Trustee to operate the business of the Debtor (the "**Operating Order**"). The Operating Order required the DIP Lender to fund, among other things, payment of all of the reasonable costs and expenses of the operation of the business of the Debtor, as set forth in a budget agreed upon by the Trustee and the DIP Lender, including the Trustee's commissions, professional fees and expenses.

10. In addition, the Operating Order provided that the Trustee and the DIP Lender "may agree, after payment of all applicable expenses of the operation of the business and payment of all applicable Chapter 7 administrative expenses, that [the DIP Lender's] claim or claims have been paid in full and file a Notice of such determination with this Court. Absent timely objection, [the DIP Lender] shall thereafter be relieved of the obligations set forth in this Order."

11. On February 28, 2013, the Court entered an order, inter alia, approving the sale of substantially all of the Debtor's assets (the "**Sale Order**") to Zigi USA, LLC or its designee ("**Zigi**").

12. Paragraph 26 of the Sale Order provided that the super-priority security interest of the DIP Lender attached to the cash proceeds of the sale (net of cure amounts) immediately upon receipt of such proceeds by the Estate.  In addition, paragraph 26 of the Sale Order stated that the amount of the DIP Lender's super-priority secured claim was $1,614,441.20 as of February 21, 2013, after applying cash on hand as of such date and subject to further receipts and authorized advances.  Paragraph 26 of the Sale Order also approved and authorized the application of cash on hand as of the closing of the sale, as well as the sale proceeds (net of cure amounts and the Trustee's commission and his professionals' fees and expenses in accordance with the Operating Order), to payment of the DIP Lender's claim.  On February 28, 2013, the sale of certain of the Estate's assets to Zigi closed.

13. As of March 13, 2013, the DIP Lender held $2,831,978.99 of the Estate's cash in a controlled account (the "**Collection Account**").  In accordance with the Sale Order, on that date the DIP Lender applied $2,210,071.26 of such funds to the payment of all outstanding DIP Obligations, the amount of which, after extensive negotiations, the DIP Lender agreed to reduce by $50,000 at the request of the Trustee.   To date, it has not been necessary to apply any of the Zigi sale proceeds to the DIP Lender's claim as the amount of the DIP Lender's claim was less than the amount of funds held by the DIP Lender in the Collection Account.

14. As of the date of this Motion, the DIP Lender continues to hold approximately $629,125.15 of the Estate's cash in the Collection Account.

15. The funds held in the Collection Account include $350,000.00 that were the subject of numerous Applications for Compensation filed by certain chapter 11 professionals, heard by the Court on April 10, 2013.  The rights to the $350,000 funds in the Collection Account are *sub judice*, and will continue to be held by the DIP Lender until further Order of the Court.

dc2311.p                                                                                                           4

### A. <u>Initial Joint Motion by the Trustee and DIP Lender</u>

16. On March 13, 2013, after extensive negotiations between the two, the DIP Lender and Trustee filed a joint motion (Docket No. 718) (the "**Initial Motion**") seeking the entry of an order: (a) finding that all of the DIP Obligations have been irrevocably paid in full and discharged; (b) authorizing the DIP Lender to return cash collateral to the Trustee; (c) finding that the DIP Lender has no further obligations in or related to this Case; (d) finding that any and all DIP Liens (as defined in the DIP Order) are hereby, and forever, released; (e) finding that the Estate has no further obligations of any kind whatsoever to the DIP Lender; and (f) granting related relief.

### B. <u>Diba Draw Request on the Letter of Credit</u>

17. On March 25, 2013, two days prior to the hearing on the Initial Motion, the DIP Lender received a letter from Diba requesting a draw on the Letter of Credit in the amount of $403,749.70, alleging as a basis Debtor's payment default with respect to alleged post-petition trade accounts payable owed to Diba (the "**Draw Letter**"). A copy of the Draw Letter is attached hereto as **Exhibit B**.

18. In response to the Draw Letter, the Trustee and DIP Lender filed a supplement to their Initial Motion (Docket No. 773), seeking an order finding that, in addition to the relief requested in the Initial Motion, the Estate and the DIP Lender have no further post-petition obligations owing to Diba and, as a result, the DIP Lender is not required to honor a presentation made by Diba with respect to a letter of credit issued by the DIP Lender.

19. The DIP Lender contends that, to the extent it must honor any amount of the Letter of Credit, its super-priority secured claim against the Estate under the DIP Credit Agreement and DIP Order would increase in corresponding amounts.

20. The Parties requested the hearings on the Initial Motion and the supplement thereto be continued to conduct due diligence and explore the possibility of settlement.  The hearings on said motions are currently set for hearing before the Court on May 29, 2013.

### III. Summary of the Proposed Stipulation and Settlement

21. The summary of the essential terms of the Parties' Stipulation is as follows:

a. **Settlement Payment to Diba and Release.**  The DIP Lender agrees to pay to Diba out of the Collection Account the sum of Two Hundred Eighty-Seven Thousand Nine Hundred Forty-Six Dollars and Eighty-Four Cents ($287,946.84) on or before 5:00 p.m. Central Time on May 31, 2013 by bank wire transfer in full and final compromise of any and all claims, known or unknown, that Diba may have or claim to have against the DIP Lender under the Letter of Credit, and any and all claims Diba may have or claim to have against the DIP Lender in any way related to the Debtor or the Estate or the DIP Credit Agreement.

b. **Final Amount of DIP Lender's Super-Priority Secured Claim.**  The Trustee and DIP Lender agree that the final amount of the DIP Lender's secured claim shall increase by the amount of the Settlement Payment to Diba described in the preceding paragraph, minus Thirty-Six Thousand Dollars ($36,000), for a final and total claim amount of Two Hundred Fifty-One Dollars Nine Hundred Forty-Six Dollars and Eighty-Four Cents ($251,946.84).   Following the payment to Diba, the DIP Lender shall pay the sum of $8821.69 back into the Collection Account to bring the balance back to $350,000.00, and pay the balance in excess of the $350,000.00, which equals

the sum of $27,178.31 to the Trustee in full and final satisfaction of any obligation of the DIP Lender to the Estate or the Trustee.

c. **Withdrawal of Supplement to Initial Motion.** Upon approval of this Agreement by the Court, the Trustee and DIP Lender agree to withdraw their supplement to the Initial Motion filed on April 9, 2013 (Docket No. 773773) and to request that the Court approve the Initial Motion (provided that the requested approval of such Initial Motion will not request a disposition of the Diba Administrative Claim or disputed $350,000.00 of the Collection Account funds that were the subject of Applications for Compensation filed by certain chapter 11 professionals, heard by the Court on April 10, 2013, which are sub judice).

d. **Inventory Held by Diba.** Diba alleges that it has inventory under its possession or control related to goods resulting from the alleged Debtor's trade accounts payable prior to Court approval of this Agreement, and Diba shall retain title and ownership of all such inventory. In the event Diba sells such inventory prior to Court Approval of this Agreement, Diba agrees to hold in trust any proceeds thereof until the Court enters an Order approving this Agreement. Upon Court approval of this Agreement, Diba may sell or dispose of any or all of such inventory and the proceeds thereof shall be for Diba's own account.

e. **Release and Waiver of Diba Claim(s) Against Estate.** Diba agrees to release and waive any claim against the Estate to the extent said claim or claims were the basis of, or related to, its draw request in the Draw Letter.

This release and waiver shall in no way affect Diba's Administrative Claim, which is unrelated to its draw request in the Draw Letter.

### IV. Basis for Relief Requested

22. Bankruptcy Rule 9019(a) authorizes the Court, after notice and a hearing, to approve a compromise or settlement of a controversy. Fed. R. Bankr. P. 9019. The approval or rejection of a compromise or settlement is left to the sound discretion of the bankruptcy court. *In re Racing Services, Inc.*, 332 B.R. 581, 586 (B.A.P. 8th Cir. 2005) (citing *Drexel, Burnham, Lambert, Inc. v. Flight Transp. Corp. (In re Flight Trans. Corp. Sec. Litig.)*, 730 F.2d 1128, 1135 (8th Cir.1984)). The Court should consider the following four factors in exercising its discretion and determination on the reasonableness of the settlement: (1) probability of success in litigation; (2) difficulties, if any, in collecting any judgment that might be rendered; (3) complexity of the litigation involved and the expense, inconvenience, and delay attendant to the litigation; and (4) the paramount interests of the creditors with proper deference to their reasonable views. *Id.* (citations omitted). The Court should consider and evaluate the factors to determine whether the settlement fits within the range of reasonableness. *Velde v. First Int'l Bank & Trust (In re Y-Knot Constr., Inc.)*, 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007). The trustee, however, does not need to establish that the proposed settlement is the best possible outcome, but only that it does not fall below the lowest point in the range of reasonableness. *Id.* citing *TCF Banking & Sav. v. Leonard (In re Erickson)*, 82 B.R. 97, 99 (D. Minn. 1988).

23. The Trustee respectfully submits that after applying the standard and four factors above to the relevant facts here, the settlement falls well within the reasonableness standard and warrants approval by the Court.

24. First, the probability of success in litigation factor weighs in favor of settlement. The issues to be resolved by the Stipulation likely would give rise to more than one claim against each party involved herein. The pursuit of said claims would require extensive legal research and the gathering and review of voluminous business records by the Trustee of a Debtor that the Trustee has little or no personal knowledge of the Debtor's prior business dealings and that is no longer operating. Although these claims will likely involve different probabilities of success, the Trustee's probability of success in any one of the claims is uncertain. Given the uncertainty, and the attendant risk, cost, and delay involved any litigation, especially complex litigation, the Trustee believes that this factor weighs in favor of settlement.

25. In regards to the second factor - the difficulties, if any, in collecting any judgment that might be rendered- the Trustee believes that this factor is likely not relevant to the extent the issues involved are nonmonetary issues and, thus would likely not involve money judgments. As to any issues that may involve money judgments in favor of the Estate, the Trustee has no reason to believe that this factor would post a risk to the Trustee.

26. The third factor – the complexity of the litigation involved and the expense, inconvenience, and delay attendant to the litigation –weighs in favor of settlement. Any litigation involved would be factually complex (the gathering and review of voluminous business records of the Debtor and other vendors, tracking down and deposing of numerous witnesses, including former Debtor employees), and likely involve complex legal issues as well. This would involve considerable time to prepare for litigation and the related expense of any litigation would likely be exceedingly costly to the Estate and would result in further delay of resolving the issues involved. In view of the favorable terms of the Stipulation to the Estate, both monetary and nonmonetary, litigation would not justify the attendant cost and delay.

27. The final factor regarding the paramount interests of the creditors and proper deference to their reasonable views also weighs in favor of the proposed settlement. Under the Stipulation, the benefits to the Estate include without limitation 1) a net of $27,178.31 cash; 2) an agreed reduction of the DIP Lender's claim in the amount of $86,000; 3) an agreement from the DIP Lender to forgo a substantial amount of professional fees; and 4) resolution of outstanding issues with the DIP Lender that will allow the Trustee to finally settle the amount of the DIP Lender's claim, who continues to assert that it has a super-priority secured claim on all Estate assets until this matter is resolved. All of these benefits also benefit the interests of the creditors. This Stipulation will allow the Trustee to more timely and efficiently winddown the remaining of Debtor's business affairs and complete overall administration of the Estate. Accordingly, the Trustee believes that the Stipulation is fair and equitable and within the best interests of the Estate and its creditors.

28. Based on the foregoing reasons and authorities, the Trustee respectfully submits that the terms of the Stipulation are fair and equitable, that they are well within the range of reasonableness, and that approval of the Stipulation is within the best interests of the Estate.

### V. Notice

29. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) all parties listed on the Master Notice List and Master Service List, last updated on January 10, 2013; (b) Diba; (c) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (d) all persons or entities known to the Trustee that have or have asserted a chapter 11 administrative expense claim. In light of the nature of the relief requested herein, the Parties submit that no other or further notice is necessary.

## VI.  Waiver of Rule 6004(h)

30. Trustee requests that the 14 day stay of Bankruptcy Rule 6004(h), to the extent applicable, be waived.

WHEREFORE, the Trustee, DIP Lender, and Diba respectfully request that the Court enter an Order (i) granting this Motion and approving the Stipulation; (ii) authorizing and directing the Trustee to take any and all necessary actions to effectuate the terms of the Stipulation; (iii) entering an Order in the form attached hereto as **Exhibit C**; and (iv) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,
BLACKWELL & ASSOCIATES, P.C.


By:   /s/ Steven N. Beck
       Steven N. Beck   /   61121MO
       Attorney for the Trustee
       P.O. Box 310, O'Fallon, MO  63366-0310
       (636) 240-3632 / Fax (636) 240-6803
       sbeck@blackwell-lawfirm.com


GREENSFELDER, HEMKER & GALE, P.C.


By:   /s/ David A. Lander
       David A. Lander, #20828
       10 South Broadway, Suite 2000
       St. Louis, Missouri 63102
       Phone: (314) 241-9090
       Fax: (314) 241-8624
       dal@greensfelder.com

*Attorneys for Diba Imports, L.P., Demand Shoes, LLC, DIBA Far East, LLC, Adjunct Trading HK Limited, and C and C Accord, Ltd.*

Choate, Hall & Stewart, LLP


By:___/s/ John F. Ventola_____
     John F. Ventola
     2 International Place, 34th Floor
     Boston, MA 021110
     Phone: (617) 248-5000
     Fax: (617) 248-4000
     JVentola@Choate.com
     Attorneys for Salus Capital Partners, LLC


## CERTIFICATE OF SERVICE

I, Sarah Soutier, certify that the foregoing was served this 23rd day of May, 2013 on all parties receiving notice through Master Notice List No. 8 and Master Service List No. 8, both dated January 10, 2013, all parties that have requested special notice pursuant to Bankruptcy Rule 2002, either electronically through the Court's CM/ECF system or via regular mail, and served on the attached list of Chapter 11 claimants via regular mail.


/s/____Sarah Soutier_____

# Updated as of May 21, 2013

Stuart I. Gordon
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556-0926

Gala Operating Co.
Benjamin S. Seigel/Buchalter Nemer
1000 Wilshire Blvd, Suite 1500
Los Angeles, CA 90017-2457

Bob & Bobby!, Inc.
Niclas A. Ferland - LeClairRyan, P.C.
545 Long Wharf Drive, 9th Floor
New Haven, CT 06511

Westfield, LLC
Richard Golubow/Winthrop Couchot
660 Newport Center Dr, Suite 400
Newport Beach, CA 92660

Blowfish Shoe, LLC - Ernie Z. Park
Bewley, Lassleben & Miller, LLP
13215 E. Penn Street, Suite 510
Whittier, CA 90602-1797

Recovery Management Systems
Attn: Ramesh Singh, Fin. Controller
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605

Howard Hirsch
Lexington Law Group
503 Divisadero Street
San Francisco, CA 94117-2212

J. Michael Debbeler
Graydon Head & Ritchey LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, OH 45202-3157

Joseph Brown Wells
Frost Brown Todd LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202

Dayton Mall II, LLC/Angela Dodd
Securities and Exchange Comm
175 West Jackson Blvd., Suite 900
Chicago, IL 60604

Gilbert R. Saydah
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Timothy B. Martin
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

Olivia Moody - Ricoh USA Inc
Recovery & Bankruptcy Group
3920 Arkwright Road, Suite 400
Macon, GA 31210

Flora Oropeza, Deputy Tax Coll/Tres
Imperial Cty Tre-Tax Collector
940 West Main Street, Suite 106
El Centro, CA 92243

Priscilla Windley, Paralegal Col. Spl
Fernando Casamayor, Tax Collector
Miami Dade Bankruptcy Unit
140 West Flagler Street, Suite 1403
Miami, FL 33130-1575

George R. Meurer
Kazen, Meurer & Perez L.L.P.
211 Calle Del Norte, Ste. 200
P.O. Box 6237
Laredo, TX 78042-6237

Joni Armstrong Coffey
County Attorney - Broward County
Government Center
115 South Andrews Avenue
Fort Lauderdale, FL 33301

Broward County - Lori A. Lewis
Deputy County Attorney
Civil Services Division
222 North Central Avenue, Ste. 1100
Phoenix, AZ 85004

Maricopa County - Tammy Jones
Oklahoma County Treasurer
320 Robert S. Kerr, Room 307
Oklahoma City, OK 73102

Spinoso Real Estate Group
100 Northern Concourse
North Syracuse, NY 13212

3341 South Linden Road Holdings
c/o CW Capital Asset Management
7501 Wisconsin Ave., Suite 500W
Bethesda, MD 20814

Freemail Associates, LLC
c/o Macerich Company
Attention: Legal Department
401 Wilshire Blvd., Suite 700
Santa Monica, California 90407

Genesee Valley Center
Attn: General Manager
G-3341 S. Linden Road
Flint, MO 48507

Freemail Associates, LLC
Attn: Center Manager
3710 Route 9, Suite 1000
Freehold, New Jersey 07728

T. Darin Boggs
Boggs, Avellino, Lach & Boggs
7912 Bonhomme Avenue, Suite 400
Clayton, MO 63105

David Warfield
Thompson Coburn
One U.S. Bank Plaza
St. Louis, MO 63101

Susan K. Ehlers
Armstrong Teasdale
7700 Forsyth Blvd., Suite 1800
St. Louis, MO 63105

Owen M. Sonik
Perdue, Brandon, Fielder,
Collins & Mott
1235 North Loop West, Suite 600
Houston, TX 77008

Carl O. Sandin
Perdue, Brandon, Fielder,
Collins & Mott
1235 North Loop West, Suite 600
Houston, TX 77008

Christina Flores
Flores & Saucedo, PLLC
5517 McPherson, Suite 14
Laredo, TX 78041

Steven M. Wallace
The Kunin Law Offices, LLC
1606 Eastport Plaza Drive, Suite 110
Collinsville, IL 62234

Linda S. Tarpley
Singer, Tarpley & Jones, PA
10484 Marty Street
Overland Park, KS 66212

Michael J. Small
Foley & Lardner, LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313

Lars A. Peterson
Foley & Lardner, LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313

Gregory Willard/Laura Bailey Brown
Carmondy MacDonald, P.C.
120 South Central Ave., Suite 1800
St. Louis, MO 63105

Michele Bergerac
1001 W. 55th Street
Kansas City, MO 64113

PACIFIC WORLDWIDE INC
P.O. BOX 7802
REDLANDS CA 92375S

URBANCAL OAKLAND MALL
6621 PAYSPHERE CIRCLE
CHICAGO IL 60674

TOWN CENTER AT COBB LLC
dba BAKERS UNIT NO.OG17
P.O. BOX 281552
ATLANTA GA 30384-1552

MAYFAIR MALL LLC SDS-12-
1637
PO BOX 86
MINNEAPOLIS MN 55486-1637
UNION SEVENTY
PARTNERSHIP
C/O GREEN STREET REALTY
3901 UNION BLVD STE 104A
ST LOUIS MO 63115

TAUBMAN CHERRY CREEK S/C
DEPARTMENT 89801
P.O. BOX 67000
DETROIT MI 48267-0898

SHOPPING CENTER
ASSOCIATES
9136 PAYSPHERE CIRCLE
CHICAGO IL 60674

SOUTHPARK MALL LP
P.O. BOX 409276
ATLANTA GA 30384-9276

NYLA (DIV OF CAVORT
INTERNATIONAL)
4833 EVERETT AVENUE
VERNON CA 90058

BESTFIT INTERNATIONAL INC.
900 CANADA COURT
CITY OF INDUSTRY CA 91748

IMON PROP. GRP. (TX), LP
867728 RELIABLE PARKWAY
CHICAGO IL 60686-0077

7703-KING OF PRUSSIA
ASSOCIATES
dba BAKERS UNIT NO. 1148
P.O. BOX 829412
PHILADELPHIA PA 19182-9412

GGP-FOUR SEASONS L.L.C.
SDS-12-2427
P.O. BOX 86
MINNEAPOLIS MN 55486-2427

SIMON PROP GROUP (IL) LP
867905 RELIABLE PARKWAY
CHICAGO IL 60686-0079

TJ PALM BEACH ASSOCIATES
DEPARTMENT 176401
P.O. BOX 67000
DETROIT MI 48267-1764

PR WOODLAND LIMITED
PARTNERSHIP
PO BOX 73858
CLEVELAND OH 44193

DEL AMO FASHION CENTER
dba WILD PAIR UNIT NO. 81
P.O. BOX 409657
ATLANTA GA 30384-9657

3341 SOUTH LINDEN RD
HOLDINGS LLC
PO BOX 934974
ATLANTA GA 31194-4974

CHINESE LAUNDRY (DIV OF
CELS ENT).
3485 S. LA CIENEGA BLVD.
LOS ANGELES CA 90016

NITIN ENTERPRISES INC.
389 5TH AVENUE 611
NEW YORK NY 10016

FAIRLANE TOWN CENTER LLC
DEPARTMENT 52001
P.O. BOX 67000
DETROIT MI 48267-0520

OAKRIDGE MALL LP
FILE NUMBER 55714
LOS ANGELES CA 900745714

LAKESIDE MALL PROPERTY
LLC    SDS-12-2772
PO BOX 86
MINNEAPOLIS MN 55486-2772

DEL AMO FASH CENTER
dba BAKERS UNIT NO. 238
P.O. BOX 409657
ATLANTA GA 30384-9657

NORTHPARK PARTNERS LP
P.O. BOX 226864
DALLAS TX 75222-6864

CROSSGATES MALL COMPANY
NEWCO LLC
M&T BANK
P.O. BOX 8000 DEPT No. 977
BUFFALO NY 14267

PINNACLE HILLS LLC
P.O. BOX 860066
MINNEAPOLIS MN 55486-0066

WEST COUNTY MALL CMBS
P.O. BOX 74045
CLEVELAND OH 44194-4045

GUARD INDUSTRIES INC
3333 WASHINGTON BLVD
ST. LOUIS MO 63103

DEMFON INTERNATIONAL
55-62 56TH STREET
MASPETH NY 11378

PACIFIC WHOLESALE
5252 BOLSA AVENUE
HUNTINGTON BEACH CA 92649

BEARPAW
7038 Sylvan, Road
CITRUS HEIGHTS CA 95610

AMIEE LYNN INC
366 FIFTH AVE-4TH FLOOR
NEW YORK NY 10001

NOT RATED-DIV OF KIA GROUP
16516 VIA ESPRILLO SUITE 100
SAN DIEGO CA 92127

JUMP FOOTWEAR
4400 ROUTE 9 SOUTH
SUITE 1000
FREEHOLD NJ 7728

PACIFIC WORLDWIDE, INC.
20 WEST 33RD STREET
11 FLOOR
NEW YORK NY 10001

EASTSTAR SOLUTIONS,LTD
DBA MOJOMOXY
11801 W. FAIRVIEW AVE.
MILWAUKEE WI 53226

GMPC, LLC
1202 W. OLYMPIC BLVD.
SANTA MONICA CA 90404

SASHA HANDBAGS, INC.
460-A MAIN AVENUE
WALLINGTON NJ 7057

BRE-Imoshion Handbags
1928 S. Santa Fe Avenue
Los Angeles CA 90021

Penny Loves Kenny by Titan Ind.
5252 BOLSA AVE.
HUNTINGTON BEACH CA 92649

KIMERA INTL-DBA LILIANO-
MISBEHAVE
827 LAWSON STREET
CITY OF INDUSTRY CA 91748

SOPHISTICATED STYLE
1220 TEXAN TRAIL #205
GRAPEVINE TX 76051

ACCENT ACC LLC
4 WARREN AVENUE
NORTH PROVIDENCE RI 2911

PENNY SUE - THE ADONI
GROUP INC
247 WEST 38TH St. 3RD FL.
NEW YORK NY 10018

E.M.S. TRADING DBA MICHAEL
ANTONIO
5161 RICHTON STREET
MONTCLAIR CA 91763

YRU INC. / CUTE TO THE CORE
13963 RAMONA BLVD #E&F
CHINO CA 91710

RFA HOLDING GROUP LLC
385 FIFTH AVE 4TH FLOOR
NEW YORK NY 10016

BOMBSHELL ACC
248 W. 35TH ST. STE 601
NEW YORK NY 10001

CERAFFI INC
120 W. 29TH ST
NEW YORK NY 10001

MARK H BROWN &
ASSOCIATES LLC
279 ST. ANDREWS DRIVE
PO BOX 342
ST. ALBANS MO 63073

TERMINIX INTERNATIONAL
P.O. BOX 17167
MEMPHIS TN 38187

CONTINENTAL STOCK
TRANSFER
& TRUST COMPANY
17 BATTERY PLACE
NEW YORK NY 10004

SHOPPERTRAK RCT CORP.
200 WEST MONROE STREET
SUITE 1100
CHICAGO IL 60606

ICR-INTEGRATED CORP
RELATIONS
761 MAIN AVENUE
NORWALK CT 6851

TRIPRO GRAPHICS &
PACKAGING LLC
1550 OCELLO DRIVE
FENTON MO 63026

DYNAMIC VENDING INC.
5433 EAGLE INDUSTRIAL CT.
HAZELWOOD MO 63042

THE POWERTECH GROUP INC.
6533 Flying Cloud Dr., Ste. 200
EDEN PRAIRIE MN 55344

CUSTOMER DIRECT
714 SPIRIT 40 PARK DRIVE
SUITE 100
CHESTERFIELD MO 63005

GOOGLE, INC.
DEPARTMENT 33654
PO BOX 39000
SAN FRANCISCO CA 94139

VERIZON BUSINESS
PO BOX 73617
CHICAGO IL 60673-7617

HUSCH BLACKWELL, LLP
PO BOX 790379
ST LOUIS MO 63179

PLAYNETWORK, INC.
PO BOX 809198
CHICAGO IL 60680-9198

C2 IMAGING, LLC
BOX 774537
4537 SOLUTIONS CENTER
CHICAGO IL 60677-4005

IMPATICO, INC.
DBA: STRATUS BUILDING
SOLUTIONS
1861 CRAIG ROAD
MARYLAND HEIGHTS MO 63146

SHIPWARE LLC
16835 W BERNARDO DR, #209
SAN DIEGO CA 92127

THE ENTERPRISE LAW GROUP
IRA L. BLANK
8151 CLAYTON ROAD SUITE 201
ST LOUIS MO 63117

DONLIN, RECANO & COMPANY
419 PARK AVENUE SOUTH
NEW YORK NY 10016

SHEPARD RETAIL SERVICES
60 EAST HANOVER AVENUE
SUITE B-4
MORRIS PLAINS NJ 7950

UBOXES, LLC.
10396 W STATE ROAD 84 #103
DAVIE FL 33324

BDO CONSULTING
100 PARK AVENUE
NEW YORK NY 10017

KEEN REALTY ADVISORS
21860 BURBANK BLVD
STE 300 SOUTH
WOODLAND HILLS CA 91367

PACHULSKI STANG ZIEHL
JONES LAW
919 N. Market St., 17th Fl.
PO BOX 6708
WILMINTON DE 19899-8705

KEYSTONE (US) MGMT INC.
dba TYCO INTEGRATED
SECURITY LLC
PO BOX 371994
PITTSBURGH, PA 15250-7994

RETURN TO SENDER
PETER A EDISON
PO BOX 78218
ST LOUIS MO 63178

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

In re:                                      )
                                            )        Case No.: 12-49658-705
**Bakers Footwear Group, Inc.,**            )
                                            )        Chapter 7
                Debtor.                     )

### STIPULATION OF SETTLEMENT AMONG CHAPTER 7 TRUSTEE, SALUS CAPITAL PARTNERS, LLC AND DIBA IMPORTS, L.P.

Robert J. Blackwell, the chapter 7 trustee (the "**Trustee**") for the estate of Bakers

Footwear Group, Inc. (the "**Estate**"), Salus Capital Partners, LLC (the "**DIP Lender**"), and Diba

Imports, L.P.[1]("**Diba**", and together with the Trustee and DIP Lender, collectively referred to

herein as the "**Parties**"), hereby enter into this stipulation of settlement (the "**Agreement**") and

agree as follows:

### RECITALS

WHEREAS, the Debtor operated a national, mall-based, specialty retail business that sold

footwear and accessories for young women; and

WHEREAS, on October 3, 2012, the Debtor filed a voluntary petition for relief under

chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States

Bankruptcy Court for the Eastern District of Missouri (the "**Court**"), with the Debtor continuing

to operate its business as a debtor-in-possession; and

WHEREAS, on November 15, 2012, the DIP Lender and the Debtor entered into the

Amended and Restated Senior Secured, Super-Priority Debtor-in-Possession Credit Agreement

(the "**DIP Credit Agreement**"), pursuant to which the DIP Lender agreed to provide the Debtor

---

[1] Diba as defined herein shall be deemed to include such affiliates, agents or assignees, including without limitation,
Demand Shoes, LLC, Diba Far East, LLC, Adjunct Trading HK Limited, and C and C Accord, Ltd.

1

with, among other things, capital necessary to continue its business operations and preserve and administer the value of the Estate; and

WHEREAS, on November 15, 2012, the Court entered an order (the "**DIP Order**") approving the post-petition financing provided by the DIP Lender, which, *inter alia*, granted the DIP Lender (a) a first priority, valid, perfected and enforceable lien, subject only to the Carve Out and Permitted Prior Liens (each as defined in the DIP Order), upon substantially all of the Debtor's real and personal property and (b) a super-priority administrative claim in respect of all obligations under the DIP Financing Agreements (as defined in the DIP Order), subject to the Carve Out as set forth in the DIP Order; and

WHEREAS, on December 4, 2012, at the Debtor's request, the DIP Lender issued an Irrevocable Standby Letter of Credit No. BKRD-0001 in the amount of $1,000,000 (One Million Dollars) (the "**Letter of Credit**") to Diba pursuant to the terms of the DIP Credit Agreement to facilitate post-petition transactions between the Debtor and Diba; and

WHEREAS, on or about December 20, 2012, the Debtor defaulted under the DIP Credit Agreement and the DIP Order; and

WHEREAS, on January 18, 2013, the Court entered an order converting the chapter 11 case to a case under chapter 7 of the Bankruptcy Code and, on January 21, 2013, Robert J. Blackwell was appointed as the Trustee; and

WHEREAS, on January 22, 2013, the Court entered an order authorizing, inter alia, the Trustee to operate the business of the Debtor and required the DIP Lender to fund, among other things, payment of all of the reasonable costs and expenses of the operation of the Debtor's business pursuant to an agreed upon budget between the Trustee and the DIP Lender, including the Trustee's commissions, professional fees and expenses; and

2

WHEREAS, on February 28, 2013, the Court entered an order, *inter alia,* approving the

sale of substantially all of the Debtor's assets (the "**Sale Order**") to Zigi USA, LLC or its

designee; and

WHEREAS, as of March 13, 2013, the DIP Lender held $2,831,978.99 of the Debtor's

cash in a controlled account (the "**Collection Account**") that the Trustee asserts was Estate

property, and pursuant to the Sale Order the DIP Lender applied $2,210,071.26 of such funds to

the payment of all outstanding DIP Obligations as defined in the DIP Order, the amount of

which, after extensive negotiations, the DIP Lender agreed to reduce by $50,000 at the request of

the Trustee (subject to the approval of the Initial Motion, as defined in the next paragraph); and

WHEREAS, on March 13, 2013 the DIP Lender and Trustee filed a joint motion (Docket.

No. 718) (the "**Initial Motion**") seeking the entry of an order: (a) finding that all of the DIP

Obligations have been irrevocably paid in full and discharged; (b) authorizing the DIP Lender to

return cash collateral to the Trustee; (c) finding that the DIP Lender has no further obligations in

or related to this Case; (d) finding that any and all DIP Liens (as defined in the DIP Order) are

hereby, and forever, released; (e) finding that the Estate has no further obligations of any kind

whatsoever to the DIP Lender; and (f) granting related relief; and

WHEREAS, as of May 10, 2013, the DIP Lender continues to hold approximately

$629,125.15 in the Collection Account; and

WHEREAS, the rights to $350,000.00 of the $629,125.15 Collection Account funds were

the subject of numerous Applications for Compensation filed by certain chapter 11 professionals,

heard by the Court on April 10, 2013, which are *sub judice*; and

WHEREAS, on March 25, 2013, the DIP Lender received a letter from Diba requesting a

draw on the Letter of Credit in the amount of $403,749.70, alleging as a basis Debtor's payment

3

default with respect to alleged post-petition trade accounts payable owed to Diba (the "**Draw Letter**"); and

WHEREAS, on April 2, 2013, the DIP Lender dishonored the Draw Letter, alleging as a basis for such dishonor that Diba failed to substantiate Debtor's underlying post-petition obligations to Diba to the satisfaction of DIP Lender (the "**Notice of Dishonor**"); and

WHEREAS, Diba alleges that the Notice of Dishonor by the DIP Lender breached the Letter of Credit in that Diba was not required to present the requested business records to substantiate Debtor's underlying post-petition obligations to Diba in connection with the Draw Letter; and

WHEREAS, the Trustee denies that Debtor received any goods post-petition from Diba that were not paid for in full; and

WHEREAS, Diba acknowledges that it is currently holding in its possession and control, or in the possession and control of its manufacturer, approximately 13,614 pairs of shoes, which it contends was a result of Debtor's failure to accept delivery of conforming goods and subsequent payment default with respect to Debtor's post-petition trade accounts payable owed to Diba; and

WHEREAS, Diba alleges that Debtor's failure to accept deliver of conforming goods and subsequent payment default with respect to post-petition trade accounts payable owed to Diba has caused Diba to incur additional expense to deliver and store such goods; and

WHEREAS, the Trustee and DIP Lender dispute, among other things, the extent to which Debtor owes, if any, post-petition trade accounts payable to Diba and, therefore, deny that the DIP Lender is required to honor the Draw Letter; and

4

WHEREAS, the DIP Lender continues to hold, and asserts that it is entitled to continue to

hold, the Collection Account funds as collateral security for the DIP Obligations, including,

without limitation, any contingent obligations with respect to letters of credit, in accordance with

the DIP Credit Agreement. In addition, the DIP Lender asserts a super-priority lien on the

proceeds from the sale to Zigi pursuant to the terms of the DIP Credit Agreement and the Sale

Order, as well as its DIP Liens on all other deposits and assets of the Estate; and

WHEREAS, on April 9, 2013 the Trustee and DIP Lender filed a supplement to the

Initial Motion (Docket No. 773) seeking an order finding that, in addition to the relief requested

in the Initial Motion, the Estate and the DIP Lender have no further post-petition obligations

owing to Diba and, as a result, the DIP Lender is not required to honor a presentation made by

Diba with respect to a letter of credit issued by the DIP Lender; and

WHEREAS, the Parties have conducted extensive settlement negotiations regarding the

Agreement and exchanged and reviewed numerous business records related to the controversies

set forth above; and

WHEREAS, without acknowledging that it was obligated to do so pursuant to the Letter

of Credit, Diba provided what purported to be business records substantiating its draw request in

the Draw Letter;

WHEREAS, it is the intention of the Parties to settle and dispose of, fully and

completely, the controversies set forth above as to the Parties, and the Parties' desire to enter into

a full and final settlement in connection therewith; and

WHEREAS, the settlement terms herein do not involve and will not dispose of the

disputed $350,000.00 of the Collection Account funds that were the subject of Applications for

Compensation filed by certain chapter 11 professionals, heard by the Court on April 10, 2013, which are *sub judice*; and

WHEREAS, the settlement terms herein do not involve and will not dispose of Diba's administrative expense claim (Court Claim No. 341) pending against the Estate (the "**Diba Administrative Claim**").

NOW THEREFORE, in consideration of the premises above, for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and the mutual covenants and agreements set forth herein, the Parties agree as follows:

1.      **Recitals.** The Recitals set forth above are herewith incorporated in this Agreement, and made a part hereof.

2.      **Settlement Payment to Diba and Release.**  Subject to the terms hereof, the DIP Lender agrees to pay to Diba out of the Collection Account the sum of Two Hundred Eighty-Seven Thousand Nine Hundred Forty-Six Dollars and Eighty-Four Cents ($287,946.84) on or before 5:00 p.m. Central Time on May 31, 2013 by bank wire transfer in full and final compromise of any and all claims, known or unknown, that Diba may have or claim to have against the DIP Lender under the Letter of Credit, and any and all claims Diba may have or claim to have against the DIP Lender in any way related to the Debtor or the Estate or the DIP Credit Agreement.

3.      **Final Amount of DIP Lender's Super-Priority Secured Claim.**  The Trustee and DIP Lender agree that the final amount of the DIP Lender's secured claim shall increase by the amount of the Settlement Payment to Diba described in the preceding paragraph, minus Thirty-Six Thousand Dollars ($36,000), for a final and total claim amount of Two Hundred Fifty-One Dollars Nine Hundred Forty-Six Dollars and Eighty-Four Cents ($251,946.84).

6

Following the payment to Diba, the DIP Lender shall pay the sum of $8821.69 back into the

Collection Account to bring the balance back to $350,000.00, and pay the balance in excess of

the $350,000.00, which equals the sum of $27,178.31 to the Trustee in full and final satisfaction

of any obligation of the DIP Lender to the Estate or the Trustee.

4.      **Withdrawal of Supplement to Initial Motion.**  Upon approval of this

Agreement by the Court, the Trustee and DIP Lender agree to withdraw their supplement to the

Initial Motion filed on April 9, 2013 (Docket No. 773) and to request that the Court approve the

Initial Motion (provided that the requested approval of such Initial Motion will not request a

disposition of the Diba Administrative Claim or the disputed $350,000.00 of the Collection

Account funds that were the subject of Applications for Compensation filed by certain chapter 11

professionals, heard by the Court on April 10, 2013, which are *sub judice*).

5.      **Inventory Held by Diba.**  Diba alleges that it has inventory under its possession

or control related to goods resulting from the alleged Debtor's trade accounts payable prior to

Court approval of this Agreement, and Diba shall retain title and ownership of all such inventory.

In the event Diba sells such inventory prior to Court approval of this Agreement, Diba agrees to

hold in trust any proceeds thereof until the Court enters an Order approving this Agreement.

Upon Court approval of this Agreement, Diba may sell or dispose of any or all of such inventory

and the proceeds thereof shall be for Diba's own account.

6.      **Release and Waiver of Diba Claim(s) Against Estate.**  Diba agrees to release

and waive any claim against the Estate to the extent said claim or claims were the basis of, or

related to, its draw request in the Draw Letter.  This release and waiver shall in no way affect

Diba's Administrative Claim, which is unrelated to its draw request in the Draw Letter.

7.      **Entire Agreement.** This Agreement constitutes and expresses the entire understanding, agreement and undertaking of the Parties with respect to the subject matter hereof, and supersede all prior agreements, if any, written or oral. There is no understanding, agreement, undertaking, representation or warranty, express or implied, which in any way limits, extends, defines or relates to the subject matter of the Agreement that is not incorporated herein. The terms of this Agreement shall not be amended or modified except by written agreement among all the Parties and subject to approval of the Court to the extent required by law.

8.      **Authority of Signatories to this Agreement.** Each party hereto expressly represents and warrants that the person executing the Agreement is fully and duly authorized to bind that party to all the terms hereof and that it is the sole owner of the claims being released herein.

9.      **Voluntary Execution of this Agreement.** The Parties represent that each has read and fully understands this Agreement and that each party has had the advice of legal counsel of his, her or its own choosing in considering and deciding to execute this Agreement, that each has fully weighed and considered all of the facts and matters that might influence his, her or its judgment in regard to the Agreement, that each has executed the Agreement freely and voluntarily, that each is not relying on any representation of the other parties or their representatives in entering into the Agreement, and that each is under no form of duress or undue influence in deciding to execute the Agreement.

10.     **Multiple Originals/Counterparts.** This Agreement may be executed in multiple counterparts, and the Parties to this Agreement may execute different pages. Signatures may be exchanged by facsimile or electronic mail and copies or facsimile/electronic mail signatures shall

8

have the same force and effect as originals. All such counterparts, signature pages, copies and originals shall be deemed to be a part of the same Agreement.

11. **Agreement Subject to Bankruptcy Court Approval.** This Agreement is conditioned upon its approval by the United States Bankruptcy Court for the Eastern District of Missouri, without which it shall be null, void and without effect.

12. **Consent to Jurisdiction.** The Court shall retain jurisdiction with respect to all matters arising from or related to the enforcement, interpretation and implementation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of May 23 2013.


SALUS CAPITAL PARTNERS, LLC          DIBA IMPORTS, LLC

By:_____          By:_____


ROBERT J. BLACKWELL, CHAPTER 7 TRUSTEE

By:_____

9

have the same force and effect as originals. All such counterparts, signature pages, copies and originals shall be deemed to be a part of the same Agreement.

11.     **Agreement Subject to Bankruptcy Court Approval.** This Agreement is conditioned upon its approval by the United States Bankruptcy Court for the Eastern District of Missouri, without which it shall be null, void and without effect.

12.     **Consent to Jurisdiction.** The Court shall retain jurisdiction with respect to all matters arising from or related to the enforcement, interpretation and implementation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of May___ 2013.


SALUS CAPITAL PARTNERS, LLC                    DIBA IMPORTS, LLC

By:_____                    By:_____
      Kyle C. Shonak

ROBERT J. BLACKWELL, CHAPTER 7 TRUSTEE

By:_____

9

have the same force and effect as originals. All such counterparts, signature pages, copies and originals shall be deemed to be a part of the same Agreement.

11.     **Agreement Subject to Bankruptcy Court Approval.** This Agreement is conditioned upon its approval by the United States Bankruptcy Court for the Eastern District of Missouri, without which it shall be null, void and without effect.

12.     **Consent to Jurisdiction.** The Court shall retain jurisdiction with respect to all matters arising from or related to the enforcement, interpretation and implementation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of May___ 2013.


SALUS CAPITAL PARTNERS, LLC                    DIBA IMPORTS, LLC

By:_____                    By:_____


ROBERT J. BLACKWELL, CHAPTER 7 TRUSTEE

By:_____

9

# EXHIBIT B

# ⊘ BRONX®        diba®

| J.B. Imports, Inc. | DIBA Imports LP | DIBA Far East LLC |
|---|---|---|

3630 Corporate Trail Drive ● Earth City, MO  63045 ● P: 314/209-0150 ● F: 314/209-0550 ● E: diane@dibashoes.com

March 22, 2013

VIA FEDERAL EXPRESS OVERNIGHT DELIVERY
Salus Capital Partners, LLC
197 First Avenue, Suite 250
Needham, Massachusetts 02494
Attn: Danielle Prentis

> **Re:    Salus Capital Partners Irrevocable Standby Letter of Credit No. BKRD-0001 for
> $1,000,000.00; Your Reference: BKRD-0001**

Dear Ms. Prentis,

In accordance with the above-referenced Irrevocable Standby Letter of Credit (the "Standby") issued by Salus Capital Partners, LLC (the "Issuer") on December 4, 2012 and expiring July 31, 2013, upon application therefor by Bakers Footwear Group, Inc., 2815 Scott Avenue, St. Louis, Missouri 63103 ("Applicant") and for the benefit of Diba Imports, LP, Demand Shoes, LLC, Diba Far East, LLC, Adjunct Trading HK Limited, and C and C Accord, Ltd., 3630 Corporate Trail Drive, Earth City, Missouri 63045 (collectively, the "Beneficiaries"), this letter and the enclosed original Standby and sight draft shall constitute presentation to Issuer for payment against the Standby pursuant to its terms.

The presenting Beneficiary certifies that (a) it is entitled to draw the sum of Four Hundred Three Thousand Seven Hundred Forty Nine and 70/100 Dollars ($403,749.70) under the Standby, as a result of a payment default in that amount by the Applicant in respect of its obligations to the presenting Beneficiary to pay amounts due in respect of trade accounts payable and (b) not less than thirty (30) days have passed since the presenting Beneficiary has made demand on the Applicant for payment of such amount.

Following payment in full of the draw demanded hereunder, Issuer is requested to issue a replacement irrevocable standby letter of credit to Beneficiaries in the amount of Five Hundred Ninety Six Thousand Two Hundred Fifty and 30/100 Dollars ($596,250.30), such amount representing the initial credit available under the Standby less the partial draw demanded hereunder.

Very truly yours,

Diba Imports, LP

By: _Diane M Butrus_
Name:  Diane M. Butrus
Title:   C O O

Demand Shoes, LLC

By: _Diane M Butrus_
Name:  Diane M. Butrus
Title:   Managing Member

Page 1 of 2

# ⊘ BRONX™

# diba®



| J.B. Imports, Inc. | DIBA Imports LP | DIBA Far East LLC |

3630 Corporate Trail Drive • Earth City, MO  63045 • P: 314/209-0150 • F: 314/209-0550 • E: diane@dibashoes.com

Diba Far East, LLC

By: _____
Name:   Diane M. Butrus
Title:    C O O

Adjunct Trading HK Limited

By: _____
Name:   Diane M. Butrus
Title:    Legal Matters Representative - US

C and C Accord, Ltd.

By: _____
Name:  Diane M. Butrus
Title:  Legal Matters Representative - US

Enclosures

# ⊗ BRONX®          diba®

J.B. Imports, Inc.                    DIBA Imports LP                    DIBA Far East LLC

3630 Corporate Trail Drive ● Earth City, MO  63045 ● P: 314/209-0150 ● F: 314/209-0550 ● E: diane@dibashoes.com

**Sight Draft**

**Salus Capital Partners, LLC**
**Irrevocable Standby Letter of Credit**
**No. BKRD-0001**

March 22, 2013

Salus Capital Partners, LLC
197 First Avenue, Suite 250
Needham, Massachusetts 02494
Attn: Danielle Prentis

Pay to the order of: Diba Imports, LP (the "Beneficiary") the amount of Four Hundred Three Thousand Seven Hundred
Forty Nine and 70/100 Dollars ($403,749.70) by wire transfer in same day funds to:

```
Bank: JPMorgan Chase Bank
Address: 10 S Dearborn, Chicago, IL 60603
Routing for Wires: 021000021
Routing for ACH: 071000013
Swift: CHASUS33
Favor: Diba Imports, L.P. Acct# 937892560
```

Diba Imports, LP

By _____

Name:   Diane M. Butrus
Title:    C O O



197 FIRST AVENUE, SUITE 250
NEEDHAM, MASSACHUSETTS 02494
ATTENTION: Danielle Prentis
PHONE: 617-420-2820
E-MAIL: dprentis@saluscapital.com

Our Reference: BKRD-0001

Applicant:                                    Beneficiary:

Bakers Footwear Group, Inc.                   Diba Imports, LP, Demand Shoes, LLC,
2815 Scott Avenue                             Diba Far East, LLC, Adjunct Trading HK
St. Louis, Missouri 63103                     Limited, and C and C Accord, Ltd.
                                              3630 Corporate Trail Drive
                                              Earth City, MO 63045 USA

Date: December 4, 2012

Re:    Irrevocable Standby Letter of Credit No. BKRD-0001 for $1,000,000

Expiration Date: July 31, 2013

At the request of the Applicant, we hereby issue our Irrevocable Transferable Standby Letter of Credit reference number BKRD-0001 in the amount of USD $1,000,000 (One Million Dollars) (the "Letter of Credit"), which is effective immediately and is available by sight payment with ourselves only against presentation at our counters by hand or overnight courier service at 197 First Avenue, Suite 250, Needham, Massachusetts 02494 of the following documents:

1. The original of this Letter of Credit and all subsequent amendments, if any;

2. Beneficiary's sight draft, in whole or in part drawn on us and indicating drawn under Salus Capital Partners, LLC, Letter of Credit No. BKRD-0001; and

3. Beneficiary's written dated statement on its letterhead, purportedly signed by an authorized representative certifying substantially as follows:

The Beneficiary certifies that (a) it is entitled to draw the sum of $[_____] under this Salus Capital Partners, LLC Letter of Credit No. BKRD-0001, as a result of a payment default in that amount by the Applicant in respect of its obligations to the Beneficiary to pay amounts due in respect of trade accounts payable and (b) not less than thirty (30) days have passed since the Beneficiary has made demand on the Applicant for payment of the stated amount.

THIS LETTER OF CREDIT EXPIRES ON July 31, 2013 AT 3:00 P.M. AT OUR COUNTERS AT 197 FIRST AVENUE, SUITE 250, NEEDHAM, MASSACHUSETTS 02494. IT IS A CONDITION OF THIS LETTER OF CREDIT THAT SUCH EXPIRATION DATE SHALL BE DEEMED AUTOMATICALLY EXTENDED, WITHOUT WRITTEN AMENDMENT, FOR ONE YEAR PERIODS IN EACH SUCCEEDING CALENDAR YEAR, UNLESS AT LEAST NINETY (90) DAYS PRIOR TO SUCH EXPIRATION DATE WE SEND WRITTEN NOTICE TO BENEFICIARY AT BENEFICIARY'S ADDRESS ABOVE BY OVERNIGHT COURIER OR REGISTERED MAIL THAT WE ELECT NOT TO EXTEND THE EXPIRATION DATE OF THIS LETTER OF CREDIT BEYOND THE DATE SPECIFIED IN SUCH NOTICE.

This Letter of Credit is transferable in whole but not in part by Salus Capital Partners, LLC, which transfer will only become effective with the written consent of the beneficiary on our Request for Full Transfer of the Letter of

5579079v2

Credit form which is attached, and provided that said transfer request form is not to a named party appearing on the Denial or Specially Designated Nationals Lists as provided by the Office of Foreign Asset Control of the United States Treasury Department and the change of beneficiary is reflected in our records. All charges related to the transfer of this letter of credit are for the account of the Applicant and the payment of such charges shall not be considered a condition of honoring a request for transfer. Should this Letter of Credit be transferred in accordance with the provisions hereof, the statement, any required documents and accompanying draft set forth above must be signed by the transferee as appearing in our records.

When presenting your draft(s) and documents or when communicating with us, please make reference to our reference number shown above.

IN ACCORDANCE WITH U. S. GOVERNMENT IMPOSED SANCTIONS AGAINST CERTAIN SPECIALLY DESIGNATED OR BLOCKED PERSONS, ENTITIES AND CERTAIN COUNTRIES, AS WELL AS PERSONS AND ENTITIES LOCATED IN OR NATIONALS OF OR RELATED TO SUCH COUNTRIES AND PROHIBITIONS AGAINST PERFORMING ACTIONS WHICH IN ANY WAY SUPPORT BOYCOTTS OF CERTAIN COUNTRIES, IT IS A CONDITION OF THIS LETTER OF CREDIT THAT WE WILL ACT IN ACCORDANCE WITH THE THEN CURRENT SANCTIONS AND PROHIBITIONS, BY REFRAINING FROM ENGAGING IN TRANSACTIONS WHICH EITHER INVOLVE SUCH COUNTRIES, OR PERSONS AND ENTITIES OR WHICH VIOLATE SUCH SANCTIONS AND PROHIBITIONS. IF WE BELIEVE, IN OUR SOLE OPINION THAT THESE SANCTIONS AND PROHIBITIONS REQUIRE US TO TAKE OR ABSTAIN FROM TAKING AN ACTION IN CONNECTION WITH THIS LETTER OF CREDIT, WE WILL DO SO AND WILL NOT BE LIABLE TO ANY PERSON OR ENTITY INVOLVED IN THIS LETTER OF CREDIT FOR THE CONSEQUENCES OF THOSE ACTIONS OR LACK THEREOF.

This Letter of Credit sets forth in full our undertaking, and such undertaking shall not in any way be modified, amended, amplified or limited by reference to any document, instrument or agreement referred to herein and any such reference shall not be deemed to incorporate herein by reference any document, instrument or agreement. Except as expressly stated herein, this undertaking is not subject to any agreements, requirements or qualifications. Our obligation under this Letter of Credit is our individual obligation and is in no way contingent upon reimbursement with respect thereto, or upon our ability to perfect any lien, security interest or any other reimbursement and are not subject to offset for any claims we may have against the Applicant or any of its affiliates. This Letter of Credit may not be revoked or amended without beneficiary's written approval and shall remain in full force and effect until it expires in accordance with the terms hereof.

Partial and Multiple Drawings are permitted. Within ten (10) days after receipt of Beneficiary's request therefor, after a partial draw, we will issue a replacement Letter of Credit reflecting the new amount available to draw, at the Beneficiary's expense. The amount of this Letter of Credit will be automatically reduced by the amount of any drawing(s) under this Letter of Credit honored by us.

Upon receipt of an affidavit of Beneficiary as to the loss, theft, destruction or mutilation of this Letter of Credit and upon cancellation of this Letter of Credit, we will issue, in lieu thereof, a replacement Letter of Credit in favor of Beneficiary, in the same amount thereof and otherwise of like tenor.

This Letter of Credit is subject to the International Chamber of Commerce Publication 590, International Standby Practices, and as to matters not governed by ICC publication 590, such matters will be governed and construed in accordance with the laws of the State of New York without regard to conflicts of law principles.

We hereby agree with you that all drafts drawn under and in compliance with the terms of this Letter of Credit will be duly honored upon delivery of documents as specified herein at our counters, to the address detailed on page one of this letter of credit, on or before the then applicable expiration date.

(Authorized Signature)
Name:  Mary Kiley
Title:   SVP

(Authorized Signature)
Name:  Kyle Shonak
Title:   SVP

5579079v2

COMMONWEALTH OF MASSACHUSETTS

_____, ss                                                      December 4, 2012

Before me, the undersigned notary public, personally appeared Macy Kiley, in his capacity as Senior Vice President of Salus Capital Partners, LLC, whose name is signed on the preceding document, and such person acknowledged to me that he signed such document voluntarily for its stated purpose. The identity of such person was proved to me through satisfactory evidence of identification, which was ☐ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, or ☐ personal knowledge of the undersigned.

Notary Public
My Commission Expires:  JuNE 20, 2019

COMMONWEALTH OF MASSACHUSETTS

_____, ss                                                      December 4, 2012

Before me, the undersigned notary public, personally appeared Kyle Shonak, in his capacity as Senior Vice President of Salus Capital Partners, LLC, whose name is signed on the preceding document, and such person acknowledged to me that he signed such document voluntarily for its stated purpose. The identity of such person was proved to me through satisfactory evidence of identification, which was ☐ photographic identification with signature issued by a federal or state governmental agency, ☐ oath or affirmation of a credible witness, or ☐ personal knowledge of the undersigned.

Notary Public
My Commission Expires:  JuNE 20, 2019

5579079v2

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

In re:                                             )
                                                   )       Case Number  **12-49658-705**
**Bakers Footwear Group, Inc.,**                   )       Chapter 7
                                                   )
             Debtor.                               )
                                                   )
                                                   )
                                                   )

### ORDER APPROVING STIPULATION OF SETTLEMENT PURSUANT TO FED. R. BANKR. P. 9019 AMONG CHAPTER 7 TRUSTEE, SALUS CAPITAL PARTNERS, LLC, AND DIBA IMPORTS, L.P.

Upon review of the Joint Motion by Robert J. Blackwell, the chapter 7 trustee ("Trustee") of the estate of Bakers Footwear Group, Inc., Salus Capital Partners, LLC ("DIP Lender"), and Diba Imports, L.P.[2], by and through their undersigned counsel for entry of an Order pursuant to Fed. R. Bankr. P. 9019 (the "Motion") approving a stipulation of settlement (the "Stipulation") among the Parties;[3] the Court finds that due and proper notice of the Motion has been given and that good and sufficient cause exists for the entry of an order granting the relief requested in the Motion; and the Court having considered Motion, the opposition thereto, if any, and the arguments of counsel, if any; and the Court having considered all relevant factors, including, but not limited those addressed in the Motion; and the Court having determined that the relief requested in the Motion is in the best interest of the Estate; and other good cause having been shown; the Court **HOLDS** that it is proper to grant the relief requested in the Motion on that basis, and accordingly **ORDERS** as follows:

**IT IS HEREBY ORDERED** that the Motion and the Motion for Expedited Hearing thereon are **GRANTED**; and

**IT IS HEREBY FURTHER ORDERED** that the Stipulation among the Parties attached as Exhibit A to the Motion be and hereby is approved in all respects;

---

[2] Diba as defined herein shall be deemed to include such affiliates, agents or assignees, including without limitation, Demand Shoes, LLC, Diba Far East, LLC, Adjunct Trading HK Limited, and C and C Accord, Ltd.
[3] All capitalized terms used but not defined herein shall have the same meaning ascribed to them in the Motion.

dc2311.p

**IT IS HEREBY FURTHER ORDERED** that the Parties are hereby authorized to take any and all actions necessary as to effectuate the terms of the Stipulation;

**IT IS HEREBY FURTHER ORDERED** that Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**IT IS HEREBY FURTHER ORDERED** that to the extent that the 14-day stay imposed under Federal Rule of Bankruptcy Procedure 6004(h) is applicable to the subject matter of this Order, such stay is hereby waived.

**DATED THIS ____ DAY OF _____, 2013.**